No. 23-30633

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Intervenor Plaintiff-Appellee*

KENT ANDERSON,

*Plaintiff-Appellee*

SUSAN HUTSON, SHERIFF, ORLEANS PARISH, SUCCESSOR TO MARLIN N GUSMAN,

*Defendant/Third-Party Plaintiff-Appellant*

STEVEN DOMINICK; ANTHONY GIOUSTAVIA; JIMMIE JENKINS; GREG JOURNEE; RICHARD LANFORD; LEONARD LEWIS; EUELL SYLVESTER; LASHAWN JONES,

*Plaintiffs-Appellees*

v.

CITY OF NEW ORLEANS

*Third-Party Defendant-Appellee*

---

Appeal from the United States District Court for the
Eastern District of Louisiana
U.S.D.C. Case No. 2:12-CV-859-LMA-MBN

---

## APPELLANT'S BRIEF OF SHERIFF SUSAN HUTSON

---

JOHN S. WILLIAMS (# 32270)
YOLANDA MARTIN-SINGLETON (# 21744)
ORLEANS PARISH
SHERIFF'S OFFICE
2800 Perdido Street
New Orleans, LA 70119
Telephone: (504) 202-9217
Email: williamsjo@opso.us

JOSHUA S. FORCE (# 21975)
DAVID A. MARCELLO (# 09250)
CURTIS J. CASE (# 39413)
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112-1033
Telephone: (504) 299-2100
Email: jforce@shergarner.com

Attorneys for Appellant, SHERIFF SUSAN HUTSON

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### *Plaintiffs-Appellees*
Kent Anderson
Steven Dominick
Anthony Gioustavia
Jimmie Jenkins
Greg Journee
Richard Lanford
Leonard Lewis
Euell Sylvester
Lashawn Jones

### *Counsel for Plaintiffs-Appellees*
Emily M. Washington
Elizabeth Cumming
Roderick & Solange MacArthur Justice Center

### *Intervenor Plaintiff-Appellee*
United States of America

### *Counsel for Intervenor Plaintiff-Appellee*
Duane A. Evans
Theodore R. Carter III
U.S. Attorney's Office

Kristen Clarke
Steven H. Rosenbaum

Laura L. Cowall
George Eppsteiner
Ariona Jean-Johnson
U.S. Department of Justice

### *Third-Party Defendant-Appellee*
City of New Orleans

### *Counsel for Third-Party Defendant-Appellee, the City of New Orleans*
Kevin Hill
Donesia D. Turner
City Attorney's Office

Harry Rosenberg
Stephanie M. Poucher
Phelps Dunbar LLP

### *Defendant-Third-Party Plaintiff-Appellant*
Susan Hutson

### *Counsel for Defendant-Third-Party Plaintiff-Appellant, Susan Hutson*
John Williams
Yolanda Martin-Singleton
Orleans Parish Sheriff's Office

Joshua S. Force
David A. Marcello
Curtis J. Case
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.

  */s/ Joshua S. Force*
JOSHUA S. FORCE

*Counsel for Appellant, Susan Hutson, Sheriff of Orleans Parish*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant/Third-Party Plaintiff/Appellant, Sheriff Susan Hutson, respectfully submits that oral argument will assist this Court in deciding the issues presented by the parties in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................... iii

TABLE OF AUTHORITIES ................................................... vi

JURISDICTIONAL STATEMENT ...................................... 1

STATEMENT OF ISSUES.................................................... 3

STATEMENT OF THE CASE ......................................... 5

A.    The parties' settlement agreement to build the
      Phase III jail................................................................. 5

B.    The District Court's enforcement of the settlement
      agreement to build the Phase III jail............................. 7

C.    The City's appeal of its 60(b) motion ......................... 11

D.    Sheriff Hutson's Motion to Terminate...................... 13

SUMMARY OF THE ARGUMENT .................................. 16

ARGUMENT ..................................................... 20

A.    The District Court erred in applying the law of the case
      doctrine..................................................................... 20

B.    The District Court erred in changing course and holding
      that it was not enforcing the parties' private agreement to
      build the Phase III jail ............................................. 24

## TABLE OF CONTENTS, continued

    1. The commitment to build the Phase III jail must
       derive from either a private settlement agreement
       or a consent decree ................................................... 24

    2. The District Court made contradictory holdings to
       avoid the limitations of the PLRA barring it from
       ordering the parties to build Phase III ................................ 27

C.  The District Court erred in holding that it had the
    authority to order the parties to build the Phase III jail
    in denying the Sheriff's Motion to Terminate ........................... 29

    1. The District Court mistakenly ruled that the decision
       to build the Phase III jail was made pursuant to
       a consent decree ................................................... 30

    2. The Report and Recommendation misinterpreted the
       PLRA ................................................................ 32

    3. The Report and Recommendation erred in holding
       that the Court had equitable power to order the
       construction of the Phase III jail ..................................... 34

    4. The Report and Recommendation's assertion that
       the lower court had equitable authority to
       order the construction of a jail conflicts with Congress's
       intent in enacting the PLRA ......................................... 36

D.  The District Court erred in enforcing the
    settlement against Sheriff Hutson ..................................... 44

CONCLUSION ................................................................. 48

CERTIFICATE OF SERVICE .................................................. 50

CERTIFICATE OF COMPLIANCE ............................................. 51

# TABLE OF AUTHORITIES

## CASES                                                        Page(s)

*Ahlman v. Barnes*,
    20 F.4th 489 (9th Cir. 2021)................................................. 37, 42

*Alabama v. Tenn. Valley Auth.*,
    636 F.2d 1061 (5th Cir. 1981) ..................................................... 36

*Am. Med. Ass'n v. Weinberger*,
    522 F.2d 921 (7th Cir. 1975) ....................................................... 34

*Anderson v. City of New Orleans*,
    38 F.4th 472 (5th Cir. 2022)............................................11, 15, 23

*Arcam Pharm. Corp. v. Faria*,
    513 F.3d 1 (1st Cir. 2007)..................................................... 16, 22

*Ashker v. California Dep't of Corr.*,
    224 F. Supp. 2d 1253 (N.D. Cal. 2002) ..................................... 38

*Bagnall v. Sebelius*,
    No. 3:11CV1703 MPS, 2013 WL 5346659
    (D. Conn. Sept. 23, 2013) .......................................................... 34

*Bates v. Johnson*,
    901 F.2d 1424 (7th Cir. 1990) ................................................... 47

*Benjamin v. Jacobson*,
    172 F.3d 144 (2d Cir. 1999)....................................................... 24

*Bigford v. Taylor*,
    896 F.2d 972 (5th Cir. 1990) ............................................... 16, 20

# TABLE OF AUTHORITIES, continued

**CASES**                                                      **Page(s)**

*Brown v. Plata*,
    563 U.S. 493 (2011) ..................................................... 40

*Cason v. Seckinger*,
    231 F.3d 777 (11th Cir. 2000) .................................... 36

*Coleman v. Schwarzenegger*,
    922 F. Supp. 2d 882 (E.D. Cal. 2009) ........................ 43

*Coll. of Am. Pathologists v. Heckler*,
    734 F.2d 859 (D.C. Cir. 1984)..................................... 34

*Conway v. Chem. Leaman Tank Lines, Inc.*,
    644 F.2d 1059 (5th Cir. 1981) .................................... 20

*Cott Index Co. v. Jagneaux*,
    96-860 (La. App. 3 Cir. 12/26/96), 685 So. 2d 656 ............... 19, 45

*Doe v. Cook Cty., Ill.*,
    798 F.3d 558 (7th Cir. 2015) ...................................... 25

*Eckiss v. Miami Corr. Facility*,
    No. 3:19-CV-530-RLM-MGG, 2019 WL 3337123
    (N.D. Ind. July 24, 2019)........................................... 41

*Frazar v. Hawkins*,
    376 F.3d 444 (5th Cir. 2004) ....................................... 2

# TABLE OF AUTHORITIES, continued

## CASES                                                              Page(s)

*Frew ex rel. Frew v. Hawkins,*
    540 U.S. 431 (2004) ................................................... 47

*Gilmore v. California,*
    220 F.3d 987 (9th Cir. 2000) ...................................... 36

*Gochicoa v. Johnson,*
    238 F.3d 278, (5th Cir. 2000) ..................................... 22

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) .................................... 38

*Guar. Trust Co. v. York,*
    326 U.S. 99 (1945) ...................................................... 41

*Guidry v. Sheet Metal Workers Local Int'l Ass'n, Local No. 9,*
    10 F.3d 700 (10th Cir. 1993) ..................................... 20

*Hazen ex rel. LeGear v. Reagen,*
    208 F.3d 697 (8th Cir. 2000) ...................................... 31

*Hewitt v. Helms,*
    459 U.S. 460 (1983) .................................................... 38

*Huerta v. Ewing,*
    No. 216CV00397JMSMJD, 2018 WL 4922038
    (S.D. Ind. Oct. 10, 2018) ........................................... 42

*In re Whitaker Const. Co.,*
    411 F.3d 197 (5th Cir. 2005) ...................................... 36

# TABLE OF AUTHORITIES, continued

CASES                                                          Page(s)

*Inmates of Occoquan v. Barry,*
    844 F.2d 828 (D.C. Cir. 1988)........................................ 5

*Jenkins v. Jefferson Par. Sheriff's Office,*
    385 So. 2d 578 (La. App. 4th Cir. 1980).................................... 44

*Jones v. Wittenberg,*
    330 F. Supp. 707 (D.C. Ohio 1971)............................................. 35

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................ 38

*Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't,*
    350 So. 2d 236 (La. App. 3d Cir. 1977)  .................................... 44

*Miller v. French,*
    530 U.S. 327 (2000) ........................................................19, 38, 41

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) .................................................................. 40

*Padgett v. Stein,*
    406 F. Supp. 287 (D.C. Pa. 1975)............................................. 35

*Pegues v. Morehouse Par. Sch. Bd.,*
    706 F.2d 735 (5th Cir. 1983) ................................................... 22

*Pharm. Care Mgmt. Ass'n v. Tufte,*
    326 F. Supp. 3d 873 (D.N.D. 2018) ................................16, 22, 34

*Phonetel Techs., Inc. v. Network Enhanced Telecom,*
    197 F. Supp. 2d 720 (E.D. Tex. 2002) ....................................... 34

# TABLE OF AUTHORITIES, continued

<u>CASES</u>                                                                    <u>Page(s)</u>

*Plyler v. Moore*,
    100 F.3d 365 (4th Cir.1996) ...................................................... 39

*Reece v. Gragg*,
    650 F. Supp. 1297 (D. Kan. 1986) .............................................. 35

*Residents of Gordon Plaza, Inc. v. Cantrell*,
    25 F.4th 288 (5th Cir. 2022)................................................. 13, 22

*Rowe v. Jones*,
    483 F.3d 791 (11th Cir. 2007) .......................................24, 30, 31

*Rufo v Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992) ................................................................ 46

*Ruiz v. United States*,
    243 F.3d 941 (5th Cir. 2001) ..................................................... 2

*Santiago v. Caldwell*,
    No. 119CV00566NONESKOPC, 2021 WL 4776900,
    (E.D. Cal. Oct. 13, 2021), *report & recommendation adopted*,
    No. 119CV00566NONESKOPC, 2021 WL 5450103
    (E.D. Cal. Nov. 22, 2021)........................................................ 41

*State v. Dep't of Justice*,
    951 F.3d 84 (2d Cir. 2020)........................................................ 33

*United States v. Rayo-Valdez*,
    302 F.3d 314 (5th Cir. 2002) ..................................................... 33

# TABLE OF AUTHORITIES, continued

**CASES**    **Page(s)**

*United States v. Wharton,*
    No. CR ELH-13-0043, 2017 WL 1862466
    (D. Md. May 8, 2017) ................................................................. 34

*United States v. City of Miami,*
    664 F.2d 435 (5th Cir. Dec. 1981) ....................................... 30-31

*Valentine v. Collier,*
    993 F.3d 270 (5th Cir. 2021) ...................................................... 40

*W. Commc'n Sys. v. Glob. Crossing Telecomms., Inc.,*
    No. 01-CV-1468 W (POR), 2001 WL 34840608
    (S.D. Cal. Sept. 18, 2001) ........................................................... 34

*Westefer v. Neal,*
    682 F.3d 679 (7th Cir. 2012) ...................................................... 38

*Williams v. Riley,*
    392 F. App'x 237 (5th Cir. 2010) ............................................... 20

## CONSTITUTION, STATUTES, AND RULES

18 U.S.C. § 3626(a)(1)(A) .............................................................. 25, 39

18 U.S.C. § 3626(a)(1)(C) ......................................................... *passim*

18 U.S.C. § 3626(b)(1)(A) .................................................................... 2

18 U.S.C. § 3626(c) ..................................................................... 17, 24

18 U.S.C. § 3626(c)(1) ................................................................. 25, 29

18 U.S.C. § 3626(c)(2) ...................................................14, 17, 22, 26, 30

# TABLE OF AUTHORITIES, continued

## CONSTITUTION, STATUTES, AND RULES                    Page(s)

18 U.S.C. § 3626(c)(2)(A) ................................................... 26, 30

18 U.S.C. § 3626(c)(2)(B) ......................................................... 30

18 U.S.C. § 3626(e)(2) ........................................................ 41, 42

18 U.S.C. § 3626(g)(1) ........................................................ 15, 16

18 U.S.C. § 3626(g)(6) ............................................................ 30

28 U.S.C. § 1292(a)(1) .............................................................. 2

28 U.S.C. § 1331 .................................................................... 2

LA. CONST. art. V, § 27 ............................................................ 44

LA. REV. STAT. § 15:704 .......................................................... 44

LA. REV. STAT. § 3:5539(C) ..................................................... 44

LA. REV. STAT. § 33:5901 ........................................................ 46

## OTHER AUTHORITY

*Law of the Case—Related Doctrines*, 18B FED. PRAC. & PROC.
JURIS. § 4478.6 (3d ed.)......................................................... 20

*Implementation of Prisoners Rights Litigation: Hearing Before
the S. Committee on the Judiciary on the Role of the U.S. Dept.
of Justice in Implementing the Prison Litigation Reform Act,*
104th Cong. (1996) (statement of Sen. Orrin Hatch),
1996 WL 556489 ................................................................... 37

# TABLE OF AUTHORITIES, continued

## OTHER AUTHORITY                                          Page(s)

H.R. Rep. No. 104-378 (1995)......................................................... 31, 37

La. Atty. Gen. Op. No. 01-129............................................................ 19

La. Atty. Gen. Op. No. 92-259............................................................ 19

La. Atty. Gen. Op. No. 92-529............................................................ 19

## JURISDICTIONAL STATEMENT

The District Court entered orders, in this prison reform litigation, concerning the construction of a Phase III jail for mental-health inmates, in New Orleans, Louisiana, in connection with a consent decree entered previously on June 6, 2013. ROA.4887-4939. On June 26, 2023, Sheriff Hutson filed a Motion to Terminate all orders regarding the construction of the Phase III jail. ROA.19054-19070. On July 19, 2023, the Magistrate Judge issued a Report and Recommendation that recommended denying Sheriff Hutson's Motion to Terminate and further recommended that an "Order Setting Conditions of Construction" be entered as an order of the court. ROA.19304-19333. On August 2, 2023, Sheriff Hutson filed her Objections to the Report and Recommendation. ROA.19353-19379. On September 5, 2023, the District Court issued its Order & Reasons adopting the Report and Recommendation as amended, denying Sheriff Hutson's Motion to Terminate, and entering the "Order Setting Conditions of Construction" as an order of the court. ROA.19500-19521. On September 10, 2023, Sheriff Hutson timely filed her Notice of Appeal. ROA.19536.

This Court has appellate jurisdiction over the Sheriff's appeal on several grounds. First, this Court has federal question jurisdiction under 28 U.S.C. § 1331 to hear disputes involving prison reform litigation arising from alleged constitutional violations. Second, the denial of a motion to terminate, filed under the Prison Litigation Reform Act (the "PLRA"), 18 U.S.C. § 3626(b)(1)(A), is appealable. *See Ruiz v. United States*, 243 F.3d 941, 945 (5th Cir. 2001). Third, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1) because it is an appeal from an interlocutory order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." "The refusal to modify a consent decree is appealable, under § 1292(a)(1), since consent decrees are injunctions for purposes of that statute." *Frazar v. Hawkins*, 376 F.3d 444, 446 (5th Cir. 2004).

## STATEMENT OF ISSUES

Congress enacted the PLRA, in 1996, to stop federal courts from micromanaging state correctional facilities. The PLRA limits the remedial powers of federal courts, in prison reform litigation, in particular, by prohibiting them from entering consent decrees directing state and local authorities to build new jails to resolve constitutional challenges to prison conditions. The PLRA also prohibits federal courts from enforcing private settlement agreements among litigants, including private agreements to construct new jails, that is, from indirectly ordering the building of new jails. The District Court sought to create a new "hybrid" procedural vehicle—a court order "based in whole or in part upon the consent or acquiescence of the parties"—to avoid these statutory prohibitions.

Neither this Court nor any other federal court has previously recognized such a hybrid approach. Therefore, this appeal presents an issue of first impression to the Court—whether a federal court may circumvent the PLRA's limitations simply by labelling its jail construction order neither a "consent decree" nor a "private settlement

agreement"—as well as additional issues related to the propriety of the District Court's order:

1.    Did the District Court err in applying the law of the case doctrine to bar Sheriff Hutson's Motion to Terminate when her motion raised different legal issues from the City's prior 60(b) motion, the District Court discussed the City's previous PLRA argument in dicta, and this Court did not consider the merits of the City's PLRA argument.

2.    Did the District Court err in holding that its earlier orders to build the Phase III jail did not enforce the parties' private settlement agreement, in violation of the PLRA, when the District Court had previously held that it had never ordered the parties to build a new jail.

3.    Did the District Court err in ordering the construction of the Phase III jail when the District Court previously held that it was enforcing the parties' private agreement and the PLRA prohibits federal courts from ordering the construction of jails.

4.    Did the District Court err in holding that it could bind Sheriff Hutson to former-Sheriff Marlin Gusman's settlement agreement when, under Louisiana law, contracts entered into by one sheriff are not binding on successor sheriffs.

## STATEMENT OF THE CASE

This appeal involves the scope of a federal district court's authority to order and enforce the construction of a jail as relief in prison reform litigation.

**A.    The parties' settlement agreement to build the Phase III jail.**

In December 2012, the Plaintiffs, the United States, and former-Sheriff Marlin Gusman agreed to a consent judgment to resolve the ongoing class action litigation regarding the conditions of the former Orleans Parish Prison ("OPP"). ROA.1506-1558. On June 6, 2013, the District Court approved a Consent Judgment based on the parties' agreement. ROA.4783-4886. The Consent Judgment ordered Mr. Gusman to implement reforms to address the problems at OPP. ROA.4887-4939. The Consent Judgment required, among other things, that Mr. Gusman ensure constitutionally adequate healthcare for inmates with mental health issues. *Id.*

The Consent Judgment did not require the construction of any new facilities to remedy that condition. *Id.* Nonetheless, Mr. Gusman acquiesced in the construction of a new facility to comply with the Consent Judgment's provisions regarding healthcare for prisoners with

mental health needs, suggesting, in 2014, that a 388-bed facility be built. On the other hand, the City of New Orleans proposed to comply with the Consent Judgment's provisions on mental health needs by retrofitting a recently constructed new facility, the Orleans Justice Center (the "OJC").

Between 2013 and 2016, Mr. Gusman failed to prove compliance with the Consent Judgment. On April 25, 2016, Plaintiffs filed a Motion for an Order to Show Cause Why Defendant Sheriff Marlin Gusman Should Not Be Held in Contempt and for Appointment of a Receiver to Implement the Consent Judgment. ROA.10653-10657. On June 21, 2016, the parties agreed to a Stipulated Order for Appointment of Independent Jail Compliance Director (the "Stipulated Order") to resolve the contempt motion. ROA.11303-11323. The Stipulated Order created the position of Independent Jail Compliance Director and gave the Independent Jail Compliance Director "final authority" to operate the OJC. ROA.123. All parties signed the Stipulated Order. The District Court later characterized the Stipulated Order as a "binding contract" and an "agreement" among the parties. ROA.16506.

On January 4, 2017, then-Independent Compliance Director Gary D. Maynard and then-Sheriff Gusman signed and filed a Supplemental

Compliance Action Plan. ROA.11678-11693. In the Supplemental Compliance Plan, Mr. Maynard and then-Sheriff Gusman recommended constructing an 89-bed Phase III facility to address the needs of inmates with acute and sub-acute mental health needs. *Id.*

On January 25, 2019, the District Court issued an order requiring the City to direct the City's architect to begin the programming phase of the proposed new Phase III jail facility as soon as possible. ROA.13073-13075. On March 18, 2019, the District Court issued a further order requiring the City to move forward with renovating the Temporary Detention Center for use before the construction of Phase III to accommodate the OJC's mental health population, to continue the programming of a new Phase III jail facility, and to work collaboratively with the parties to design and build a new Phase III jail facility. ROA.13224-13226.

## B. <u>The District Court's enforcement of the settlement agreement to build the Phase III jail.</u>

On June 29, 2020, the City filed a Motion for Relief from Court Orders of January 25, 2019 and March 18, 2019 Regarding Phase III Jail Facility. ROA.14102-14103. The City alleged that significantly changed circumstances made construction of the Phase III jail infeasible. *Id.* The

City brought its motion pursuant to Federal Rule of Civil Procedure 60(b), which permits modification of a consent decree when there are significant changes of circumstances that justify modifying the decree. In addition to citing the changed circumstances (e.g., the decline in jail population, revenue shortfalls, the ability to constitutionally accommodate the jail population with current facilities, and the COVID-19 pandemic), the City argued, for the first time in its reply brief, that the District Court's orders to construct a new prison violated 18 U.S.C. § 3626(a)(1)(C) of the PLRA by ordering the parties to construct a new jail. ROA.15438-15468. Section 3626(a)(1)(C) provides that: "Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts." The other parties urged the District Court not to consider the City's PLRA argument based on its timing. ROA.15588-15610.

On December 7, 2020, Magistrate Judge North issued a Report and Recommendation that recommended denying the City's 60(b) motion and finding there were no significant changes in circumstances to justify

8

modifying the Consent Judgment. ROA.16473-16543. Magistrate Judge North ruled further that the City had waived its PLRA argument by raising it first in its reply brief. ROA.16501. Nevertheless, Magistrate Judge North went on to discuss the merits of the City's PLRA argument, which he repeatedly rejected because of what he characterized as a "contractual obligation" and "agreement" among the parties to build the Phase III jail. ROA.16502-16508.

In particular, Magistrate Judge North rejected the City's PLRA argument by stating that the District Court had *not ordered the construction of a new jail* but, instead, had simply *ordered the parties to comply with their* "*contractual*" *agreement* to construct a new jail:

> The City is absolutely wrong that the Stipulated Order does not embody its *contractual obligation to build Phase III* – once the Compliance Director chose Phase III as the solution to the special-needs problem implicated in section D.22, the City was, in fact, *contractually obligated to construct that facility.*

ROA.16504-16505 (emphasis added).

*    *    *

> The problem for the City is *not that the Court issued some illegal order to "construct a prison" in violation of the PLRA;* the problem is that *the City entered into a binding contract* with the other parties in the case to allow the Compliance Director to develop a plan and that once that plan was submitted the City fully accepted it for over four years, even

9

extending into the current administration.  *The orders the City now claims violated federal statutory law did no such thing – they simply ordered the City to effectuate a plan it had voluntarily and contractually bound itself to undertake.*

ROA.16505-16506 (emphasis added).

\*        \*        \*

The City thereafter accepted that plan and committed to it, not only to the parties but to the Court – on multiple occasions. (See, e.g., rec. doc 1127).  It did this voluntarily and as part of a *binding agreement with the other parties* to the litigation.  It did not do so because it was ordered to.

ROA.16503 (emphasis added).

\*        \*        \*

First and foremost, *the Court has never ordered the City to build a jail. . . .*  The Court has repeatedly explained to the City's attorneys how and why they are wrong, including on multiple occasions during the very first day of the hearing: *So, to be clear*, and this will address some of the questions that Mr. Rosenberg was asking earlier, the City has not ordered -- *the Court has not ordered the City to build a jail.*  The Court has ordered the City to solve a problem, *and the City has chosen on multiple occasions to submit this solution [Phase III] to the Court in response to that.*

ROA.16502 (emphasis added).

On January 25, 2021, the District Court fully adopted Magistrate Judge North's Report and Recommendation and the finding that there were no significant changes in circumstances. ROA.16633-16637. The

10

District Court held further that the City had waived its PLRA argument but, nonetheless, echoed Magistrate Judge North's ruling that the Court had not ordered the parties to construct the Phase III jail:

> And to be clear:  *the City, not this Court, decided to construct Phase III.*  The Court is not imposing Phase III on anyone. The City did that years ago. The Court is simply fulfilling its legal obligation to hold the City to its word.

ROA.16634-16635 (emphasis added).

*     *     *

> [T]he City admits it is seeking relief from its own commitment—*not a Court order*. That admission is, by itself, fatal to the City's present attempt to renege.

ROA.16635-16636 (emphasis added).

## C.   <u>The City's appeal of its 60(b) motion</u>[1]

The City appealed the denial of its 60(b) motion to this Court. This Court affirmed the District Court's ruling that there were no significant changes in circumstances. *See Anderson v. City of New Orleans*, 38 F.4th 472, 481 (5th Cir. 2022).  The Court did not address, however, the merits of the City's PLRA argument. Rather, the Court held only that the City's PLRA argument did not constitute a change in circumstances or the law

---

[1] In the City's appeal of its 60(b) motion, Sheriff Hutson participated as an amicus in support of the City, before assuming the position of Sheriff.

under Rule 60(b) and therefore expressly declined to review the

argument. *See id.* at 478-79.[2]

---

[2] The following is this Court's complete discussion of the City's PLRA argument, reported at 38 F.4th at 478-79:

> The city claims the PLRA, 18 U.S.C. § 3626, prohibits the district court's ordering the city to fulfill its agreed-to obligations under the supplemental compliance action plan to build an 89-bed facility to house detainees with serious mental-health and medical needs. One of the responses to this PLRA issue is that it has been waived because the city raised it in district court for the first time in its reply brief for its Rule 60(b) motion. In that motion, the city cited three "changed circumstances" as grounds for relief. Again, the PLRA issue was not one of them.
>
> It is not clear whether the city claims the PLRA issue is independent of the Rule 60(b) motion. If it is asserted as an independent issue of law, it would be reviewed *de novo. E.g., Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007). But, in that instance, we would lack jurisdiction because the only basis for appeal is the Rule 60(b) motion. If it is pursued under Rule 60(b)(5), it is subject to review for abuse of discretion, as discussed *infra*. In any event, the issue fails. We visit the issue briefly under the latter standard.
>
> As noted, relief is available under Rule 60(b)(5) when, *inter alia*, "applying [the judgment or order] prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). As also noted, this requires a change "*in factual conditions or in law.*" *Horne*, 557 U.S. at 447, 129 S.Ct. 2579 (emphasis added) (citation omitted). The city's PLRA issue is based on neither. (The city's seeming attempt to base it on changed conditions caused by the COVID-19 pandemic is obviously a non-starter. The pertinent portion of the PLRA has not changed.) Therefore, the claim fails under Rule 60(b)(5); accordingly, we need not consider whether it has been waived.

**D.    Sheriff Hutson's Motion to Terminate.**

Susan Hutson ran successfully against former-Sheriff Gusman and was elected on December 11, 2021. Since Sheriff Hutson was inaugurated on May 2, 2022, she has not entered into any contract, agreement, or understanding with any party for the construction of the Phase III jail, nor has she adopted or acquiesced to it in any way. Sheriff Hutson has consistently opposed the building of the Phase III jail, having determined that it is unnecessary and its discredited panopticon design would be harmful to residents and staff of the jail. She has nonetheless also committed herself, multiple times, both orally and in writing, to provide constitutionally compliant medical and mental health care for all OJC residents and to do so as expeditiously as possible.

On June 26, 2023, following remand from this Court, Sheriff Hutson filed a Motion to Terminate All Orders Regarding the Construction of the Phase III Jail. ROA.19054-19070. In her Motion, Sheriff Hutson argued that, based on the District Court's prior holding that it had never ordered the construction of the Phase III jail, the District Court's orders must purport to enforce a private settlement agreement to build the jail, which it lacks authority to enforce under 18

U.S.C. §§ 3626(c)(2), (g)(6). *Id.* If, as the District Court later suggested, the commitment to build the Phase III jail arose, instead, from a consent decree, 18 U.S.C. § 3626(a)(1)(C) likewise prevents the Court from ordering the construction of the Phase III jail as part of a consent decree. *Id.* Sheriff Hutson argued further that, under Louisiana law, Sheriff Hutson is not bound by former-Sheriff Gusman's settlement agreement to build the jail. *Id.*

On July 19, 2023, Magistrate Judge North issued a Report and Recommendation that recommended denying Sheriff Hutson's Motion to Terminate and further recommended that the District Court enter an "Order Setting Conditions of Construction" for the building of the Phase III jail. ROA.19304-19333. The proposed order incorporated the terms of a Cooperative Endeavor Agreement ("CEA"), setting forth each party's responsibilities for building and maintaining the Phase III jail, that the City had previously proposed to Sheriff Hutson but that she had never accepted. ROA.19334-19349.

In recommending denial, Magistrate Judge North reversed his prior stance, asserting that "there are *no 'private agreements' to build Phase III* in this record, *only enforceable Court orders.*" ROA.19318

(emphasis added). Magistrate Judge North reasoned further that "the PLRA does not prohibit courts from ordering the construction of a jail in the exercise of their equitable powers." ROA.19315-19316. The Magistrate Judge also rejected the Sheriff's motion based on this Court's decision in *Anderson* (i.e., the prior appeal), finding that it barred her PLRA argument under the "law of the case" doctrine. ROA.19308-19311. On August 2, 2023, Sheriff Hutson filed Objections to the Report and Recommendation. ROA.19355-19379.

On September 5, 2023, the District Court issued its Order & Reasons overruling Sheriff Hutson's Objections, adopting the Report and Recommendation as amended, denying Sheriff Hutson's Motion to Terminate, and entering the order governing the parties' construction responsibilities. ROA.19500-19521. The Order & Reasons posited a novel remedy—not quite a consent order to build a jail, not quite an order enforcing a private settlement agreement, but instead a "hybrid" order falling somewhere between the two:

> Sheriff Hutson appears to argue that the orders in this case must be *either court orders to build Phase III* or *private settlement agreements.* In reality, the *previous orders of this Court are subject to judicial enforcement and based in whole or in part upon the consent or acquiescence of the parties.* As such, they fit the PLRA's definition of a consent decree. 18

15

U.S.C. § 3626(g)(1). … These orders simply hold the parties to their judicially-enforceable agreements.

ROA.19509 (emphasis added). The Order & Reasons declined to address whether the PLRA prohibited federal courts from ordering the construction of prisons because it found that "the Court did not order the construction of Phase III." ROA.19510.

## SUMMARY OF THE ARGUMENT

1.      The District Court erred in applying the law of the case doctrine to bar Sheriff Hutson's Motion to Terminate. The District Court addressed its prior rejection of the City's PLRA argument only in dicta. Dicta does not establish law of the case, however. *Arcam Pharm. Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007). Law of the case also requires an appellate court decision on the merits of the issue. *See Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir. 1990). This Court did not address the merits of the City's PLRA argument on the City's prior appeal; this Court declined even to decide if the City's PLRA argument had been waived (*see supra* note 2). Therefore, the law of the case doctrine does not bar the Sheriff's motion. In fact, the Sheriff's Motion to Terminate raised a wholly different argument under the PLRA that could thus not conceivably be precluded by the law of the case doctrine. After

16

abandoning its argument that the District Court never ordered the parties to construct Phase III, as it had expressly held, the District Court still had no authority under the PLRA to enforce the parties' agreement to do so. Neither the District Court nor this Court considered, let alone decided, that argument in the earlier proceedings.

2. The District Court erred in ruling that it was not enforcing the parties' private settlement agreement to build the Phase III jail. The PLRA recognizes only two types of "settlements": private settlement agreements and consent decrees. 18 U.S.C. § 3626(c). A private settlement agreement is not enforceable by the court. *Id.* §§ 3626(c)(2), (g)(6). A consent decree is enforceable by the court. *Id.* § 3626(g)(1). Any relief in this prison reform litigation must fit into one of these two categories.

In denying the City's 60(b) motion, the District Court held unequivocally that it had "never ordered" the parties to build the Phase III jail; it was merely "order[ing] the City to effectuate a plan [the City] had voluntarily and contractually bound itself to undertake." ROA.16505-16506. Thus, within the definitional constraints of the PLRA, the District Court effectively acknowledged that the agreement to

build the Phase III jail arose from a private settlement agreement, not from a consent decree or court order. In later denying Sheriff Hutson's Motion to Terminate, however, the District Court reversed course. To circumvent the PLRA's prohibition, the District Court held that it was not enforcing the parties' private settlement agreement but was instead ordering the construction of the Phase III jail as part of a consent decree.

3.    Because there are only two types of mutually exclusive "settlements" under the PLRA, the District Court's ruling that the agreement to build the Phase III jail did not arise from a private settlement agreement means that it arose from a consent decree. If so, the District Court erred in ordering the construction of the Phase III jail because § 3626(a)(1)(C) of the PLRA prohibits courts from ordering the construction of jails as part of a consent decree.

The Report and Recommendation, which the District Court adopted, wrongly stated that the PLRA does not prohibit the construction of jails and that courts have the equitable authority to order the construction of jails. The Report and Recommendation's assertion that the court had equitable authority to order the construction of Phase III directly conflicts with Congress's intent in enacting the PLRA:  to curb

the federal courts' remedial powers in prison reform litigation, including the authority to compel the building of a new jail. *See Miller v. French*, 530 U.S. 327, 339 (2000). The PLRA sets standards of federalism and comity by which the federal courts are bound; the lower court ignored those standards.

4.    The District Court erred in binding Sheriff Hutson to former-Sheriff Marlin Gusman's settlement agreement to build Phase III. Under Louisiana law, a sheriff may not enter into contracts that extend beyond the sheriff's term of office and may not bind a successor to such a contract. *See* La. Atty. Gen. Op. Nos. 01-129, 92-529, 92-259; *see also Cott Index Co. v. Jagneaux*, 96-860 (La. App. 3 Cir. 12/26/96), 685 So. 2d 656, 658. Thus, Sheriff Hutson is not bound by Mr. Gusman's agreement to build the Phase III jail as a matter of state law.

# ARGUMENT

## A.   The District Court erred in applying the law of the case doctrine.

The District Court erred in applying the law of the case doctrine to bar the relief sought in Sheriff Hutson's Motion to Terminate. The law of the case doctrine is established by an appellate court decision. *See Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir. 1990); *Williams v. Riley*, 392 F. App'x 237, 240 (5th Cir. 2010). The "doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy." *Guidry v. Sheet Metal Workers Local Int'l Ass'n, Local No. 9*, 10 F.3d 700, 705 (10th Cir. 1993). This "nondiscretionary aspect of the law of the case doctrine is sometimes called the mandate rule." *Id.* (quotations omitted).[3]

"As a general rule if the issues were decided, either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal." *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir. 1981). "On the other hand, unlike common law res judicata, the law of the case established by a prior

---

[3] "Focus on the mandate rule is desirable only if its requirements are met—if the appellate court in fact did not consider and resolve an issue not presented on the first appeal, the trial court acting on remand should not be bound as tightly as if the issue had in fact been resolved." *Law of the Case—Related Doctrines*, 18B FED. PRAC. & PROC. JURIS. § 4478.6 (3d ed.).

appeal does not extend to preclude consideration of issues not presented or decided on the prior appeal." *Id.* (internal quotations omitted). "The doctrine of the law of the case applies only to the issues decided, not to all those presented for decision but left answered." *Id.* In *Conway*, for example, this Court did not apply the law of the case doctrine where the plaintiff had not "had their day in court" regarding an issue presented to the district court that the district court declined to rule on and the appellate court did not decide. *See id.* at 1062.

The District Court held that the law of the case doctrine "prevents Susan Hutson from re-litigating the question of whether the challenged orders violate any purported prohibition on courts ordering the construction of prisons based on the" PLRA. ROA.19502. Yet, the law of the case doctrine could not bar Sheriff Hutson's PLRA argument because Sheriff Hutson's Motion to Terminate raised different legal issues from the City's 60(b) motion. Moreover, even if Sheriff Hutson's Motion to Terminate had raised the same legal issue as in the City's 60(b) motion, neither the District Court nor this Court decided the PLRA argument raised in the City's 60(b) motion.

Sheriff Hutson's legal argument in her Motion to Terminate was entirely distinct from that of the City, grounded in the prohibition on enforcing a private settlement agreement, under 18 §§ 3626(c)(2), (g)(6), rather than the prohibition on ordering construction, under 18 § 3626(a)(1)(C). That is, neither the District Court nor this Court was even presented with the argument that what the District Court ruled was barred by the law of the case doctrine.

The District Court never directly ruled on the City's PLRA argument; thus, its prior ruling could not establish law of the case. In addressing the City's 60(b) motion, the Magistrate Judge recommended and the District Court held that the City had waived its PLRA argument. Accordingly, any subsequent statements concerning the merits of the City's PLRA argument are dicta. "Dictum constitutes neither the law of the case nor the stuff of binding precedent; rather, it comprises observations in a judicial opinion or order that are not essential to the determination of the legal questions then before the court." *Arcam Pharm. Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007).[4]

---

[4] *See also Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 295 n.1 (5th Cir. 2022); *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000); *Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983).

The District Court further incorrectly stated that this Court "considered the PLRA argument." ROA.19503-19504. This Court affirmed the denial of the City's 60(b) motion but did not address, let alone decide, the merits of the PLRA argument, i.e., whether a federal court could order the construction of a jail in a consent decree. *See Anderson*, 38 F.4th at 479. The Court considered only whether the PLRA constituted a change in law warranting modification of a consent decree under Rule 60(b); it did not consider whether the PLRA prohibits courts from ordering the construction of prisons. This Court's opinion in *Anderson* does not constitute law of the case with respect to the Sheriff's PLRA arguments, and, consequently, the law of the case doctrine does not bar Sheriff Hutson's Motion. The District Court erred in applying the law of the case doctrine to bar the relief sought in Sheriff Hutson's Motion to Terminate. Sheriff Hutson is still entitled to her day in court on those arguments.

**B.** **The District Court erred in changing course and holding that it was not enforcing the parties' private agreement to build the Phase III jail.**

    **1.** **The commitment to build the Phase III jail must derive from either a private settlement agreement or a consent decree.**

Under 18 U.S.C. § 3626(c), the parties in prison reform litigation may enter into only two mutually exclusive types of settlements: (1) consent decrees or (2) private settlements. The PLRA defines these terms separately: "[I]t is clear that Congress sought to distinguish these two terms given the explicit definition that consent decrees 'do[] not include private settlements.'" *Rowe v. Jones,* 483 F.3d 791, 796 (11th Cir. 2007) (citing *Benjamin v. Jacobson*, 172 F.3d 144, 157 (2d Cir. 1999) (en banc) ("Given these definitions, it appears that Congress sought to make the [PLRA]'s concepts of consent decrees and private settlement agreements mutually exclusive.")).

Nonetheless, "both consent decrees and private settlement agreements are based at least in part on an agreement between parties." *Id.* at 795. Section 3626(g)(1) defines "consent decree" as "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties *but does not include private settlements.*" (Emphasis added.) The PLRA limits the federal courts' authority to enter

a consent decree, however, despite being based upon the parties' acquiescence. Under § 3626(c)(1), a "court shall not enter or approve a consent decree unless it complies with the limitations on relief set forth in subsection (a) [of § 3626]." 18 U.S.C. § 3626(c)(1). "[I]f an agreement is judicially enforceable—that is, if a violation means anything other than restarting the litigation on the merits—the agreement must be treated as a 'consent decree,' and *what a court cannot do by final order in a contested case it also cannot do by the parties' consent* (that's the effect of combining § 3626(c)(1) and (2) with § 3626(g)(1) and (6))." *Doe v. Cook Cty., Ill.*, 798 F.3d 558, 563 (7th Cir. 2015) (emphasis added).

Subsection (a) of § 3626 provides that a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Importantly for the case before this Court, § 3626(a)(1)(C) expressly prohibits federal courts, "in exercising their remedial powers," from "order[ing] the construction of prisons.*" Id.* § 3626(a)(1)(C). A court may not therefore enter a consent decree, consent judgment, or consent order,

i.e., a court order, that orders the parties in prison reform litigation to build a jail.

Quite differently, § 3626(g)(6) defines a "private settlement agreement" as "an agreement entered into among the parties *that is not subject to judicial enforcement* other than the reinstatement of the civil proceeding that the agreement settled*." Id.* § 3626(g)(6) (emphasis added). In contrast to consent decrees, the PLRA allows parties to "enter[] into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a) [of § 3626], *if the terms of that agreement are not subject to court enforcement* other than the reinstatement of the civil proceeding that the agreement settled." *Id.* § 3626(c)(2)(A) (emphasis added). Thus, the only remedies available under the PLRA to enforce an agreement to construct a jail are (i) "reinstatement of the civil proceeding that the agreement settled" or (ii) "seeking in State court any remedy available under State law" for breach of the settlement agreement. *See id.* Under the PLRA, a court may not order the parties to build a jail either directly through a court order or indirectly through enforcement of the parties' otherwise valid agreement to build a jail.

2.   <u>The District Court made contradictory holdings to avoid the limitations of the PLRA barring it from ordering the parties to build Phase III.</u>

When it denied the City's 60(b) motion, the District Court held and made clear to the parties that it had never ordered the parties to construct the Phase III jail; instead, it had simply ordered the parties to comply with their private "contractual" agreement to build Phase III. In recommending denial of the City's 60(b) motion, Magistrate Judge North stated that "the orders the City now claims violated federal statutory law did no such thing – they simply ordered the City to effectuate a plan it had voluntarily and contractually bound itself to undertake." ROA.16505-16506. The District Court agreed and adopted the Report and Recommendation, concluding that "the City, not this Court, decided to construct Phase III. The Court is not imposing Phase III on anyone. The City did that years ago. The Court is simply fulfilling its legal obligation to hold the City to its word." ROA.16634-16635. The Court observed further that the City sought "relief from its own commitment—not a Court order." ROA.16635-16636.

Taking at face value the District Court's holding—that it had never ordered the building of Phase III—Sheriff Hutson's Motion to Terminate

argued that the District Court must terminate its prior orders because the PLRA prohibited it from enforcing the parties' "contractual obligation" or "agreement" to build Phase III. In subsequently denying the Sheriff Motion to Terminate, the District Court completely reversed course in an obvious attempt to circumvent the PLRA's prohibition on enforcing private settlement agreements. Despite having previously held that it was "simply fulfilling its legal obligation to hold the City to its words," ROA.16634-16635, the District Court adopted the Magistrate Judge's contrary finding that "there are *no 'private agreements' to build Phase III* in this record, *only enforceable Court orders*." ROA.19318 (emphasis added). The District Court then held that "the previous orders of this Court are subject to judicial enforcement and based in whole or in part upon the consent or acquiescence of the parties." ROA.19509.

This holding violates the express terms of the PLRA and should be reversed. The PLRA prohibits federal courts from judicially enforcing parties' private agreements to build a jail and does not recognize the hybrid type order the District Court attempted to create, i.e., an order "based in whole or in part upon the consent or acquiescence of the parties." Indeed, any such order is merely another way of characterizing

a consent decree as defined under § 3626(g)(1) of the PLRA—"any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties *but does not include private settlement*"—and a consent decree may not order the parties to construct a jail. *See* 18 U.S.C. §§ 3626(a)(1)(C), 3626(c)(1) (emphasis added).

C. <u>The District Court erred in holding that it had the authority to order the parties to build the Phase III jail in denying the Sheriff's Motion to Terminate.</u>

The District Court erred in ruling that it was not enforcing the parties' private settlement agreement to build the Phase III jail. Because the PLRA does not create or recognize a hybrid type of settlement, if the District Court's orders did not enforce an agreement of the parties, then they must have arisen from a consent decree ordering the building of the jail, despite the District Court's express disclaimer in denying the City's earlier 60(b) motion. If so, the District Court still erred in denying the Sheriff's Motion to Terminate because it had no authority, under the PLRA, to order the construction of a jail as part of a consent decree.

1.    <u>The District Court mistakenly ruled that the decision to build the Phase III jail was made pursuant to a consent decree.</u>

Whether a settlement agreement is a "private settlement agreement" or a "consent decree" turns on whether the federal court asserts authority to enforce the agreement. In *Rowe v. Jones*, the United States Court of Appeals for the Seventh Circuit explained the effect of judicial enforcement:

> Private settlement agreements are "not subject to judicial enforcement," 18 U.S.C. § 3626(g)(6), and the *private settlement agreement* exemption from the PLRA's restrictions applies "if the terms of [an] agreement *are not subject to court enforcement* other than the reinstatement of the civil proceeding that the agreement settled," *id.* § 3626(c)(2)(A) (emphasis added). In contrast, consent decrees are "entered by the court," *id.* § 3626(g)(1), and the PLRA directs courts to comply with its restrictions on prospective relief before "enter[ing] or approv[ing]" consent decrees, *id.* § 3626(c)(1). *Based on the plain language of the PLRA, judicial enforcement is thus the critical distinction between private settlement agreements and consent decrees.*
>
> \*    \*    \*
>
> The presence of judicial enforcement affects the remedies that parties can seek for a breach of an agreement's terms. *Under the PLRA, the only remedies for a breach of a private settlement agreement are "the reinstatement of the civil proceeding that the agreement settled" or a state law claim.* 18 U.S.C. § 3626(c)(2)(A), (c)(2)(B); *see also United States v. City of Miami*, 664 F.2d 435, 439 (Former 5th Cir. Dec. 1981) (en banc) ("If the parties agree to compose their differences by a settlement agreement, ... the only penalty for failure to

30

abide by the agreement is another suit."). In contrast, because consent decrees are entered by the court and are judicially enforceable, they function like any other court order or judgment and thus "may be enforced by judicial sanctions, including citation for contempt if [they are] violated." *City of Miami*, 664 F.2d at 440; *see also Hazen ex rel. LeGear v. Reagen*, 208 F.3d 697, 699 (8th Cir. 2000) (interpreting the PLRA and distinguishing consent decrees "enforceable through the supervising court's exercise of its contempt powers" from private settlement agreements "enforceable only through a new action for breach of contract").

*Rowe*, 483 F.3d at 796–97 (emphasis added).

*Rowe* examined the legislative history of the PLRA and confirmed Congress's intent that private settlement agreements may not be judicially enforced:

> The congressional committee report of a predecessor bill, which contained nearly identical termination provisions to the PLRA's provisions, stated that the restriction on prospective relief "limits the use of court-enforced consent decrees to resolve prison conditions suits, while freely allowing the use of private settlement agreements. Parties may continue to enter such agreements to avoid lengthy and burdensome litigation, but they cannot expect to rely on the court to enforce the agreement." H.R. Rep. No. 104–21, at 24–25 (1995); *see also Benjamin*, 172 F.3d at 158 (interpreting the PLRA's legislative history). Accordingly, the legislative history makes it plain that Congress intended to distinguish consent decrees, which are judicially enforced agreements, from private settlement agreements, which are not judicially enforced.

*Id.* at 796.

The District Court recognized "that the PLRA provides for two kinds of agreements between parties: private settlement agreements and consent decrees." ROA.19508. By belatedly ruling that the agreement to build the Phase III jail was not a private settlement agreement, the District Court sought to salvage the "previous orders of this Court" by recharacterizing them to "fit the PLRA's definition of a consent decree." ROA.19509. The District Court cannot have it both ways, initially claiming mere judicial enforcement of the parties' "agreement" to build the Phase III jail and, then, holding that their agreement is a consent decree—a court order. Section 3626(a)(1)(C) of the PLRA prohibits the District Court from ordering the construction of a jail as part of a consent decree, and, as discussed below, federal courts have no equitable authority outside the PLRA to order the construction of a jail.

### 2. The Report and Recommendation misinterpreted the PLRA.

The Report and Recommendation, which the District Court adopted, misinterpreted the terms of the PLRA and erred in holding that § 3626(a)(1)(C) does not prohibit federal courts from "order[ing] the construction of prisons." ROA.19316. The Report and Recommendation held that "[t]he plain language of [§ 3626(a)(1)(C)] simply says that the

32

PLRA does not, in and of itself, <u>authorize</u> federal courts to order prison construction; it does not say that federal courts <u>are prohibited from</u> doing so or that the PLRA somehow repealed the courts' equitable powers to remedy the violation of constitutional rights." ROA.19316.

It is a basic tenet of statutory construction that "it is necessary to give meaning to all [] words and to render none superfluous." *See United States v. Rayo-Valdez*, 302 F.3d 314, 318 (5th Cir. 2002). If the PLRA did not prohibit jail construction orders, as the Report and Recommendation concluded, there would be no need for § 3626(a)(1)(C) because the PLRA does not otherwise address jail construction. That is, courts would not have to look to the PLRA for such authority; they could simply rely upon their pre-PLRA equitable authority. The Magistrate Judge's interpretation of the PLRA would render § 3626(a)(1)(C) superfluous, violating a basic tenet of statutory construction.

Other courts have therefore construed the same prefatory language upon which the Report and Recommendation rested its reading of the statute (i.e., "Nothing in this section shall be construed to authorize . . .") to prohibit the subsequent unauthorized action, not to preserve existing authority as the Magistrate Judge concluded. *See, e.g., State v. Dep't of*

*Justice*, 951 F.3d 84, 108-09 (2d Cir. 2020); *Coll. of Am. Pathologists v. Heckler*, 734 F.2d 859, 867 (D.C. Cir. 1984); *Am. Med. Ass'n v. Weinberger*, 522 F.2d 921, 925 (7th Cir. 1975); *Pharm. Care Mgmt. Ass'n v. Tufte*, 326 F. Supp. 3d 873, 888 (D.N.D. 2018); *United States v. Wharton*, No. CR ELH-13-0043, 2017 WL 1862466, at *7 (D. Md. May 8, 2017); *Bagnall v. Sebelius*, No. 3:11CV1703 MPS, 2013 WL 5346659, at *23 (D. Conn. Sept. 23, 2013); *Phonetel Techs., Inc. v. Network Enhanced Telecom*, 197 F. Supp. 2d 720, 722–23 (E.D. Tex. 2002); *W. Commc'n Sys. v. Glob. Crossing Telecomms., Inc.*, No. 01-CV-1468 W (POR), 2001 WL 34840608, at *1 (S.D. Cal. Sept. 18, 2001). Section 3626(a)(1)(C) does not support the Report and Recommendation's statutory construction argument, which misinterpreted the terms of the PLRA.

3.  **The Report and Recommendation erred in holding that the Court had equitable power to order the construction of the Phase III jail.**

The Report and Recommendation not only misread § 3626(a)(1)(C) but stated, without citation, that federal courts had equitable authority to order the construction of a jail. Before the enactment of the PLRA, however, federal courts generally held just the opposite. As the Court of

Appeals for the District of Columbia concluded in *Inmates of Occoquan v. Barry*:

> Such fundamental decisions as how many prisons to build and how large to build them—basic decisions regarding the allocation of public resources—are simply *outside the domain of federal courts*. Indeed, it would have been difficult for the District Court to fashion a remedy that more fundamentally implicates the tensions between the prerogatives of local authorities and the demands of the Constitution.[5]

844 F.2d 828, 843 (D.C. Cir. 1988) (emphasis added). No equitable authority to order the construction of jails *existed* for the PLRA to *preserve* as the Report and Recommendation assumed. *See id.* (rejecting "invo[cation of] the talisman of 'broad equitable discretion' as the basis for demanding that the District of Columbia either build more prisons or let convicted prisoners go free"). Thus, contrary to the Report and Recommendation's assertion, the District Court's equitable authority did not permit it to order the parties to build the Phase III jail.

---

[5] *See also Reece v. Gragg*, 650 F. Supp. 1297, 1306 (D. Kan. 1986) ("Even if this Court could order a new jail built, it would not do so. A decision such as that is a decision to be made by the political process, not by judicial fiat."); *Padgett v. Stein*, 406 F. Supp. 287, 303 (D.C. Pa. 1975) ("this court lacks the power to order public funds expended to build a new prison"); *Jones v. Wittenberg*, 330 F. Supp. 707, 712 (D.C. Ohio 1971) (holding that the court has no power to require the public to fund new jails).

4.   <u>The Report and Recommendation's assertion that the lower court had equitable authority to order the construction of a jail conflicts with Congress's intent in enacting the PLRA.</u>

The Report and Recommendation's embrace of some equitable authority to issue jail construction orders conflicts with Congress's demonstrable intent in enacting the PLRA, not only as illustrated and discussed above by the statute's terms, but also by its legislative history. "The fundamental question in all cases of statutory interpretation is legislative intent and the reasons that prompted the legislature to enact the law." *In re Whitaker Constr. Co.*, 411 F.3d 197, 204-05 (5th Cir. 2005). "[P]ractical interpretation of a statute must be weighed in determining legislative intent." *Alabama v. Tenn. Valley Auth.*, 636 F.2d 1061, 1066 (5th Cir. 1981).

Congress enacted the PLRA, in 1996, expressly to limit the scope of prospective relief that federal courts could grant to resolve constitutional challenges to prison conditions. *See Cason v. Seckinger*, 231 F.3d 777, 779–80 (11th Cir. 2000). Congress recognized that the complexities of operating prisons were not readily susceptible to resolution by court decree and required deference to the expertise of prison administrators and local officials. *See Gilmore v. California*, 220 F.3d 987, 991, 996-97

(9th Cir. 2000). Congress enacted the PLRA, therefore: (i) to limit federal court oversight and micromanagement of state prisons; (ii) to preclude federal courts from imposing remedies intended to effect an overall modernization of local prison systems or to provide an overall improvement in prison conditions; and (iii) to restore control over those prisons to the states. *Id.* at 997 n.11 (citing H.R. Rep. No. 104-21, at 24 n.2 (1995)). PLRA sponsor Senator Orrin Hatch decried "overzealous Federal courts . . . micromanaging our Nation's prisons" and "judicial orders entered under Federal law [which] have effectively turned control of the prison system away from elected officials accountable to the taxpayer, and over to the courts." *Id.* at 966 (quotation omitted)).[6]

In the PLRA, Congress proscribed federal courts' traditional equitable powers and restricted remedies in prison reform litigation only to those listed in the statutes. *See Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021) ("Indeed, the court's traditional equitable power is

---

[6] According to Senator Hatch, the PLRA's sponsor, Congress sought, in particular, to prevent federal courts from "micromanag[ing] our nation's prisons" and thereby subverting the "proper roles of the democratic branches and the states." *Implementation of Prisoners Rights Litigation: Hearing Before the S. Committee on the Judiciary on the Role of the U.S. Dept. of Justice in Implementing the Prison Litigation Reform Act*, 104th Cong. (1996) (statement of Sen. Orrin Hatch), 1996 WL 556489. *See also* H.R. Rep. No. 104-378, at 166 (1995) ("Specifically, the section places limits on the type of prospective relief available to inmate litigants.").

expressly proscribed by the PLRA's plain statutory limitations, as the Supreme Court has held in a similar PLRA provision in *Miller v. French*."). The PLRA preserved existing limitations on federal courts' remedial powers and required that any "injunctive relief avoid unnecessary disruption to the state agency's normal course of proceeding." *Ashker v. California Dep't of Corr.*, 224 F. Supp. 2d 1253, 1263 (N.D. Cal. 2002) (citing *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001); *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). The PLRA set parameters within which a court may grant injunctive relief in the corrections context, *see Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012), based on the principle that "prison officials have broad administrative and discretionary authority over the institutions they manage." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *see also Westefer*, 682 F.3d at 683 (The PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions:  prison officials have broad administrative and discretionary authority over the institutions they manage.").

The operative language of the PLRA makes clear that this Court may provide prospective relief only to the extent necessary to correct the

constitutional violation. *See* 18 U.S.C. § 3626(a)(1)(A). The legislative history is instructive:  "[T]his 'provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions' by 'limiting remedies to those necessary to remedy the proven violation of federal rights.'" *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir. 1996) (quoting H.R. Rep. No. 21, 104th Cong., 1st Sess. 7, at 24 n.2 (1995)). These limitations "reflect separation of powers and federalism concerns that have long informed the Court's equitable powers with respect to State agencies." *Ashker*, 224 F. Supp. 2d at 1263.

"Principles of federalism and separation of powers impose stringent limitations on the equitable power of federal courts." *Lewis*, 518 U.S. at 385 (Thomas, J., concurring);[7] *see also Gomez*, 255 F.3d at 1129

---

[7] "When these principles are accorded their proper respect, Article III cannot be understood to authorize the Federal Judiciary to take control of core state institutions like prisons, schools, and hospitals, and assume responsibility for making the difficult policy judgments that state officials are both constitutionally entitled and uniquely qualified to make. Broad remedial decrees strip state administrators of their authority to set long-term goals for the institutions they manage and of the flexibility necessary to make reasonable judgments on short notice under difficult circumstances. At the state level, such decrees override the State's discretionary authority over its own program and budgets and force state officials to reallocate state resources and funds to the district court's plan at the expense of other citizens, other government programs, and other institutions not represented in court. The federal judiciary is ill equipped to make these types of judgments, and the Framers never imagined that federal judges would displace state executive officials and state

39

(discussing limited power to issue injunctive relief under PLRA).[8] "[F]ederalism concerns are particularly acute in the context of prison management." *Valentine v. Collier*, 993 F.3d 270, 294 (5th Cir. 2021) (Oldman, J., concurring) (citing *Lewis*, 518 U.S. at 386 (Thomas, J., concurring)). "Federal judges are particularly ill-equipped to manage state prisons: 'Three years of law school and familiarity with pertinent Supreme Court precedents give no insight whatsoever into the management of social institutions.'" *Id.* at 294 (citing *Brown v. Plata*, 563 U.S. 493, 558 (2011) (Scalia, J., dissenting)).

The PLRA sets standards of federalism and comity by which the federal courts are bound. Congress intended the PLRA to limit the authority of federal courts in managing state prisons, including the exercise of their remedial powers over the construction of new jails. Congress sought, instead, to defer to state and local officials, who are in the best position to make those kinds of decisions.

---

legislatures in charting state policy." *Lewis*, 518 U.S. at 385-86 (Thomas, J., concurring) (internal citations and quotations omitted).

[8] *See also Lewis*, 518 U.S. at 349 ("[I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."); *id.* (involvement of a state agency only increases the need for restraint given the introduction of federalism concerns) (citing *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)).

The Report and Recommendation disregarded these standards and limitations in recommending that the District Court exercise previously non-existent equitable powers to order the building of Phase III. In doing so, the Report and Recommendation failed to explain why Congress would have permitted, *sub silentio*, federal courts to exercise broad equitable powers to micromanage the construction of a jail despite the legislation's central purpose to limit such authority. The answer is that the PLRA prohibits federal courts from ordering jail construction—whether through their equitable or other powers.

In fact, as the Supreme Court recognized in *Miller v. French*, "curbing the equitable discretion of district courts was one of the PLRA's principal objectives," 530 U.S. 327, 339 (2000), and "Congressional curtailment of equity powers must be respected."[9] *Guar. Trust Co. v. York*, 326 U.S. 99, 105 (1945). At issue in *Miller* was § 3626(e)(2), which provides that "[a]ny motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay." The Supreme Court

---

[9] *See also Santiago v. Caldwell*, No. 119CV00566NONESKOPC, 2021 WL 4776900, at *3 (E.D. Cal. Oct. 13, 2021), *report & recommendation adopted*, No. 119CV00566NONESKOPC, 2021 WL 5450103 (E.D. Cal. Nov. 22, 2021); *Eckiss v. Miami Corr. Facility*, No. 3:19-CV-530-RLM-MGG, 2019 WL 3337123, at *2 (N.D. Ind. July 24, 2019).

rejected the federal government's argument that the district court retained traditional equitable authority to override the operation of the PLRA's automatic stay. The Court concluded that, given Congress's intent to curb the equitable discretion of the district courts, it would have been anomalous for Congress to have left § 3626(e)(2) vulnerable to that very same exercise of judicial discretion. *Id.*; *see also Ahlman*, 20 F.4th at 492 ("[T]he PLRA provision [regarding the expiration of preliminary injunctions] clearly 'displaces the court's traditional equitable authority.'").

This same rationale applies to § 3626(a)(1)(C). Given Congress's intent to curb the federal courts' remedial powers, § 3626(a)(1)(C) should be read—contrary the lower court's reading—to preclude a district court from ordering prison reform litigants to construct a new jail under its supposed equitable or other remedial authority.[10] Other federal courts have therefore held that the PLRA's restrictions on equitable powers also restrict them from ordering jail construction. *See, e.g., Huerta v. Ewing*,

---

[10] Even if we posit that federal courts had authority to order construction of jails before the enactment of the PLRA, the PLRA removed such authority by providing that "[n]othing in this section shall be construed to authorize the courts, *in exercising their remedial powers*, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts." 18 U.S.C. § 3626(a)(1)(C) (emphasis added).

No. 216CV00397JMSMJD, 2018 WL 4922038, at *7–8 (S.D. Ind. Oct. 10, 2018) ("Plaintiffs acknowledge that the PLRA prevents the Court from ordering Defendants to build a new jail"); *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 951 (E.D. Cal. 2009) ("In considering other alternatives to a prisoner release order, we first look to whether the state has a feasible prison construction plan that would render a prisoner release order unnecessary; if so, equity, if not law, would require that we refrain from entering that order.").

The Report and Recommendation misinterpreted the language of the PLRA and incorrectly concluded that the lower court had equitable authority to order the construction of Phase III. The Report and Recommendation's incorrect assertion, adopted by the District Court, conflicts with Congress's intent to curb federal courts' remedial powers in prison reform litigation through the PLRA. Accordingly, the District Court erred in denying Sheriff Hutson's Motion to Terminate on the basis that the PLRA did not prohibit it from ordering the construction of the Phase III jail.

**D.** **The District Court erred in enforcing the settlement against Sheriff Hutson.**

Sheriff Hutson was not a party to the private settlement agreement that the District Court purported to enforce. Sheriff Hutson has not agreed to be bound by her predecessor's agreement, nor has she acquiesced in the construction of the Phase III jail in any way. Even if the District Court had the authority to enforce the agreement, which it does not, the District Court could not enforce the agreement against Sheriff Hutson because she is neither a party to the agreement nor bound by the actions of her predecessor.

The sheriff is the chief law enforcement officer of the parish and by law is the keeper of the parish jail. *See* LA. CONST. art. V, § 27; LA. REV. STAT. §§ 13:5539(C), 15:704. The office of the sheriff is not a legal entity with the legal capacity to be sued; such capacity is reserved to each sheriff individually. *See Jenkins v. Jefferson Par. Sheriff's Office*, 385 So. 2d 578, 579 (La. App. 4th Cir. 1980); *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977). In the same vein, under Louisiana law, a sheriff may not enter into contracts that extend beyond the sheriff's term of office and may not bind a successor to such a contract. *See* La. Atty. Gen. Op. Nos. 01-129, 92-529, 92-259.

As explained by the Louisiana Third Circuit Court of Appeal in *Cott Index Co. v. Jagneaux*, the office of the sheriff has no legal status and is only the functional organization through which sheriffs carry out their duties. *See* 96-860 (La. App. 3 Cir. 12/26/96), 685 So. 2d 656, 658. The office of the sheriff "does not have the capacity to enter into contracts, nor can it be a legal party to litigation." *Id.* The *Cott* Court held that a contract between a clerk of court (who is a parochial official, just like a sheriff) and a third-party was not enforceable against the clerk's successor. *See id.* at 659. The *Cott* Court explained further: "To hold otherwise would allow an unscrupulous out-going office holder to bind the incoming office holder thereby undermining the will of the people." *Id.* Therefore, under Louisiana law, an agreement made by former-Sheriff Gusman does not bind the current-Sheriff Hutson. To enforce Mr. Gusman's agreement against Sheriff Hutson would violate this principle of Louisiana law.

Chapter 38 in Title 33 of the Louisiana Revised Statutes supports this principle. The Louisiana Legislature enacted Chapter 38, authorizing the creation of law enforcement districts, expressly to enable sheriffs to undertake multi-year obligations (such as taxing and bonding

authority), thus assuring that these ongoing obligations endured beyond the term of any individual officeholder. Section 33:5901 of the Revised Statutes provides that in "the parish of Orleans, such a special district is hereby created for the purpose of providing financing to the office of criminal sheriff" and that "the criminal sheriff or his successor shall be ex officio the chief executive officer of the district." This statutory provision establishes a political subdivision that can shoulder long-term responsibilities and overcome limitations in the capacity of each individual sheriff to bind a successor. The law enforcement district was not a party to the private settlement agreement at issue. Under Louisiana law, Sheriff Gusman's commitment as an individual rather than on behalf of the law enforcement district accounts for why it expired at the end of his term.

This principle—that each sheriff is an individual, not an "office," and that a successor sheriff may not be bound in contract by a predecessor—accords with principles recognized in prison reform litigation that a successor official should not be bound by its predecessor's decisions in a consent decree, especially when their views of the relief differ. In *Rufo v Inmates of Suffolk County Jail*, the Supreme Court

recognized that "[t]o refuse modification of a decree is to bind all future officers of the State, regardless of their view of the necessity of relief from one or more provisions of a decree that might not have been entered had the matter been litigated to its conclusion." 502 U.S. 367, 392 (1992). Instead, district courts should "defer to local government administrators, who have the 'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform, to resolve the intricacies of implementing a decree modification."[11] *Id.*

Mr. Gusman's prior decisions about the private settlement agreement should not be imputed to Sheriff Hutson, who was not a party to the agreement, who has different views on the necessity and propriety of the Phase III jail, and who is the official now charged with operating any newly constructed jail. As the Seventh Circuit acknowledged in *Bates v. Johnson*:

---

[11] *See also id.* at 392 n.14 ("[P]rinciples of federalism and simple common sense require the court to give significant weight to the views of the local government officials who must implement any modification."); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441-42 (2004) ("If not limited to reasonable and necessary implementations of federal law, remedies outlined in consent decrees involving state officeholders may improperly deprive future officials of their designated legislative and executive powers… . [F]ederalism principles require that state officials with front-line responsibility for administering the program be given latitude and substantial discretion.").

> A state's right to make fresh choices about domestic policy as
> political officials turn over may even be an implied term in a
> consent decree, given the norm that public officials may not
> bind their successors. If as a matter of state law an official
> lacks authority to commit the state to maintain a rule beyond
> his term of office, that official cannot accomplish through a
> consent decree what he has no power to accomplish, period.
> The decree's force comes from consent, not a resolution of the
> merits, and it creates obligations no broader than those to
> which the signatories have actual authority to give assent.

901 F.2d 1424, 1426 (7th Cir. 1990). Here, under Louisiana law, Mr.

Gusman had no authority to bind Sheriff Hutson to the parties' private

settlement agreement; his consent to that agreement may not be

transferred to Sheriff Hutson. The District Court erred in enforcing the

private settlement agreement against Sheriff Hutson.

## CONCLUSION

The District Court has taken contradictory positions on whether it

merely enforced the parties' agreement to build the Phase III jail or

ordered them to do so. Either way, the PLRA bars the District Court's

orders:  The PLRA prohibits federal courts both from enforcing parties'

private agreements to build new jails and from ordering them to build

jails in prison reform litigation. The PLRA recognizes no exception to

these prohibitions for court orders based upon the parties' acquiescence

as the District Court held.

48

For the foregoing reasons, this Court should reverse the District Court's judgment denying Sheriff Hutson's Motion to Terminate and terminate all orders entered by the District Court regarding the construction of the Phase III jail.

Respectfully submitted,

*/s/ Joshua S. Force*

JOSHUA S. FORCE (# 21975)
DAVID A. MARCELLO (# 09250)
CURTIS J. CASE (# 39413)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, LA 70112-1033
Telephone: (504) 299-2100
Email:     jforce@shergarner.com
           dmarcello@shergarner.com
           ccase@shergarner.com

– and –

JOHN S. WILLIAMS (# 32270)
YOLANDA MARTIN-SINGLETON (#21744)
**ORLEANS PARISH SHERIFF'S OFFICE**
2800 Perdido Street
New Orleans, LA 70119
Telephone: (504) 202-9217
Email:     williamsjo@opso.us

Attorneys for Appellant
SUSAN HUTSON, SHERIFF OF ORLEANS PARISH

49

## CERTIFICATE OF SERVICE

I certify that, on November 27, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Joshua S. Force*
JOSHUA S. FORCE

*Counsel for Appellant, Susan Hutson, Sheriff of Orleans Parish*

## CERTIFICATE OF COMPLIANCE

This Appellant's Brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because it contains 10,324 words as determined by the word-count function of Microsoft Word 2013.

This Appellant's Brief also complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century font, 14-point type face.

 */s/ Joshua S. Force*
JOSHUA S. FORCE

*Counsel for Appellant, Susan Hutson, Sheriff of Orleans Parish*