# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2024

Lyle W. Cayce
Clerk

---

No. 23-30633

---

Kent Anderson; Steven Dominick; Anthony Gioustavia; Jimmie Jenkins; Greg Journee; Richard Lanford; Leonard Lewis; Euell Sylvester; Lashawn Jones,

*Plaintiffs—Appellees,*

United States of America,

*Intervenor Plaintiff—Appellee,*

*versus*

Susan Hutson, *Sheriff, Orleans Parish, Successor to Marlin N. Gusman,*

*Defendant/Third Party Plaintiff—Appellant,*

*versus*

City of New Orleans,

*Third Party Defendant—Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-859

---

Before Smith, Wiener, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

This appeal stems from twelve years of litigation against, *inter alia*, the Orleans Parish Sheriff's Office regarding constitutionally inadequate housing and medical care for jail detainees at Orleans Parish Prison. In 2013, the district court approved a consent decree proposed by Plaintiffs, the United States, and former Sheriff Gusman. The City and Sheriff also stipulated to developing the plan for adequate housing and care. After years of stalemate, a compliance director and the former Sheriff proposed a plan to construct a mental health annex, known as Phase III, at the existing jail. The former Sheriff was a driving force behind that decision. But as temporary housing for detainees became untenable, the district court ordered the parties to proceed with their stipulations and Phase III. No party appealed those orders. Now, there's a new Sheriff in town, and she has moved to terminate all orders concerning Phase III. The district court denied the motion. Plaintiffs class and the United States argue chiefly that this court lacks jurisdiction to hear the appeal. We agree and DISMISS for lack of jurisdiction.

## I.

We previously described the facts in detail. *See Anderson v. City of New Orleans*, 38 F.4th 472, 475-78 (5th Cir. 2022) ("*Anderson I*"). We do not repeat them here. However, because the arguments are strikingly similar, we begin with *Anderson I*. There, we considered the City of New Orleans's ("City") motion for relief from the orders on Phase III.

In 2016, after years of delay and disagreements about implementation of the consent decree, the parties entered a stipulated order which, at the parties' request, the district court entered as an order of the court ("Stipulated Order"). As relevant here, the Stipulated Order provided that "the City, the Sheriff, and the Compliance Director shall develop and finalize

a plan for . . . appropriate housing for prisoners with mental health issues and medical needs."

After extensive consultation with the parties, the Compliance Director submitted a Supplemental Compliance Action Plan ("Plan"). The Plan recommended the construction of a new treatment facility called "Phase III" on existing Orleans Parish Sheriff's Office property, with eighty-nine beds to house detainees, an infirmary, and treatment space for all detainees with certain medical and mental-health needs. In 2017, Sheriff Gusman signed the Plan, along with the Compliance Director. The City indicated that the parties were "moving forward" with the construction of Phase III and that "the project should be completed within 24 to 40 months."

Two years later, in 2019, despite its earlier commitment to the Stipulated Order, the City wanted to explore alternatives to Phase III. The district court ordered the City to comply with the Plan and direct the architect to begin Phase III construction and programming "as soon as possible" ("January 2019 Order"). Subsequently, the City informed the district court that it was "actively working" with Sheriff Gusman and the compliance director "to program, design, and construct a Phase III project that meets the requirements of the Consent Decree, and does so in a cost-effective manner." Accordingly, the court ordered the City and Sheriff to "continue the programming phase of Phase III," to "work collaboratively to design and build a facility that provides for the constitutional treatment of [detainees with serious mental-health and medical needs] without undue delay, expense[,] or waste," and to provide monthly progress reports to

No. 23-30633

"advise the Court of the City's progress toward construction of Phase III" ("March 2019 Order").[1]

After entry of the March 2019 Order, however, the City unilaterally ordered the architect and project manager to stop Phase III. The City filed a motion under Federal Rule of Civil Procedure 60(b)(5), arguing that changed circumstances warranted relief from the district court's January 2019 and March 2019 Orders (collectively "2019 Orders"). Specifically, the City argued that Section 3626(a)(1)(C) of the Prison Litigation Reform Act ("PLRA") prohibited the court from ordering the construction of a new jail facility. The City also moved for a stay of those orders. Following a two-week hearing, the magistrate judge issued a report and recommendation, later adopted by the district court, denying the City's motions. The City appealed.

In *Anderson I*, we affirmed the district court's decision.[2] As relevant here, we declined to rule on the merits of the City's PLRA argument, holding that, because "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests," the Court lacked jurisdiction over "the substance of the January and March 2019 orders." *Anderson I*, 38 F.4th at 478, 479. We explained that "Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially meaningless." *Id.* (citation omitted); *see also id.* ("Rule 60(b)(5) may not be used to challenge the legal

---

[1] To be clear, this appeal does not concern the consent decree referenced by the dissent. The Sheriff's motion only addresses the Stipulated Order and 2019 Orders, *not* the 2013 consent decree. Thus, we consider whether we have jurisdiction over those orders only.

[2] The panel permitted Sheriff Hutson, who was inaugurated as the new Sheriff of Orleans Parish in May 2022, to file an amicus brief and participate in oral argument with respect to the City's appeal. *Anderson I*, 38 F.4th at 480.

conclusions on which a prior judgment or order rests." (quoting *Horne v. Flores*, 557 U.S. 433, 477 (2009))).

After *Anderson I*, Sheriff Hutson was automatically substituted as a party under Federal Rule of Civil Procedure 25(d), replacing Sheriff Gusman.[3] Meanwhile, the City entered a construction contract and began work on Phase III. Sheriff Hutson, her counsel, and several members of her Office's staff were included in monthly discussions regarding the ongoing construction of Phase III.

Over a year after Sheriff Hutson was sworn into office, however, she moved to "terminate all prospective relief regarding the construction of the Phase III jail pursuant to 18 U.S.C. § 3626(b)." The magistrate judge recommended the denial of the Sheriff's motion and the entry of an order embodying the terms of the Cooperative Endeavor Agreement ("CEA"), which was negotiated by the parties and signed by the former Sheriff.[4] In July 2023, the district court adopted that recommendation with amendments unrelated to this appeal. In so doing, the district court made findings

---

[3] Rule 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."

[4] To clarify, the terms of the CEA are not in dispute. Sheriff Hutson did not object to any of its discrete provisions despite having the opportunity to do so. Nonetheless, the dissent takes issue with the CEA's terms involving a federal contract clause. *Compare post* at 2 n.1 (citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 208 (2023)) *with* C.F.R. § 200.321 ("The non-federal entity must take all necessary affirmative steps to assure that minority businesses, women's business enterprises, and labor surplus area firms are used when possible."). Setting aside the red herring, the record reflects that the order "embodying the terms of the CEA would not be an order 'authorizing' a project. Rather, it would 'set out the various conditions under which the project will be conducted and spell out the City's and the Sheriff's respective obligations during the project.'" After all, that is the natural result of parties negotiating and signing an agreement.

pursuant to Section 3626(a)(1)(A), (B) of the PLRA for at least the third time in this case.

The Sheriff appealed and twice moved to stay "all orders regarding the construction of the Phase III jail." A panel of this court denied those motions. The Phase III facility remains "in progress at 12.82% complete."

## II.

This case is déjà vu all over again.[5] Similar to the City, Sheriff Hutson argues—under a different procedural mechanism—that the PLRA bars the district court from ordering the construction of Phase III. *Anderson I*, 38 F.4th at 478. As always, we have jurisdiction to determine our own jurisdiction. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 390 (5th Cir. 2006).

The Sheriff suggests two primary bases[6] for appellate jurisdiction over the 2019 Orders.[7] First, the Sheriff contends that we have jurisdiction over a court's denial of a motion to terminate pursuant to the PLRA. Second, the Sheriff argues that we have jurisdiction over the refusal to modify a consent decree. *See* 28 U.S.C. § 1292(a)(1).

In opposition, Plaintiffs and the United States argue that we have jurisdiction over the denial of a motion to terminate, but we lack jurisdiction over the substance of the 2019 Orders and Stipulated Order. Moreover, they

_____

[5] *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.,* 33 F.4th 747, 748 (5th Cir. 2022) (footnote citation omitted).

[6] The Sheriff asserts a third basis for appellate jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. § 1331. As Plaintiffs explain, Section 1331 speaks only to the "original jurisdiction" of the "district courts," not to our appellate authority. *See* 28 U.S.C. § 1331.

[7] Although the Sheriff has not specified the exact orders on appeal, we assume the Sheriff challenges the 2019 Orders. To the extent the Sheriff challenges additional orders, such as the Stipulated Order, our analysis encompasses all.

contend that the Sheriff's motion is not the proper procedural mechanism for the relief sought.[8]

We now turn to jurisdiction and the function and scope of the Sheriff's motion. As before, "we have jurisdiction to review the denial of the . . . motion, but not the underlying . . . orders." *Anderson I*, 38 F.4th at 477-78; *see Ruiz v. United States*, 243 F.3d 941, 945 (5th Cir. 2001).

## A.

Section 1292(a)(1) confers jurisdiction over appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). "Just as it has done with the collateral order doctrine, the Court has 'approached this statute somewhat gingerly lest a floodgate be opened' that permits immediate appeal over too many nonfinal orders." *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015) (quoting *Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 24–25 (1966)). "A district court 'grants' an injunction when an action it takes is 'directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion.'" *Id.* at 491 (quoting *Police Ass'n of New Orleans Through Cannatella v. City of New Orleans*, 100 F.3d 1159, 1166 (5th Cir. 1996)). "On the other hand, a court has not modified an injunction when it 'simply implements an injunction according to its terms or designates procedures for enforcement

---

[8] Separately, Plaintiffs note that the Sheriff's and City's reliance on 28 U.S.C. § 1292(a)(1) undermines the Sheriff's purported basis for termination: that the district court's enforcement of a "private settlement agreement" to build Phase III violates the PLRA. To invoke § 1292(a)(1), however, there must be a "consent decree" or "injunction" that the Sheriff's motion sought to "modify." § 1292(a)(1). Here, the Sheriff disavows the existence of any consent decree regarding the Phase III facility. Thus, the Sheriff's § 1292(a)(1) argument is a nonstarter.

without changing the command of the injunction.'" *Id.* "Interpretation, then, is not modification . . . . [T]aking a practical view of modification, [we] 'look [] beyond the terms used by the parties and the district court to the substance of the action.'" *Id.* (quoting *In re Seabulk Offshore Ltd.*, 158 F.3d 897, 899 (5th Cir. 1998)).

"In addition to showing that an order granted, modified, refused, or dissolved an injunction, a party challenging an interlocutory order must show 'serious, perhaps irreparable, consequences,' because the § 1292(a)(1) 'exception is a narrow one.'" *In re Deepwater Horizon*, 793 F.3d at 492 (quoting *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978)).

For example, in *In re Deepwater Horizon*, we dismissed the appeal for lack of jurisdiction regarding an order interpreting part of a massive class-action settlement.[9] *Id.* at 492. There, defendants argued that an order constituted an injunction or, alternatively, the court's subsequent denial of the motion for reconsideration was a modification of the injunction. *Id.* We assumed *arguendo* that the order was an injunction or modification but explained that defendants failed to "'show serious, perhaps irreparable, consequence[s].'" *Id.* (quoting *Gardner*, 437 U.S. at 480). Thus, we concluded that defendants could not invoke jurisdiction under Section 1292(a)(1). *Id.* at 492.

Like *In re Deepwater Horizon*, the Sheriff's jurisdictional argument fails under Section 1292(a)(1). As the district court observed, "the Sheriff has styled her motion as one to 'terminate' rather than vacate or reverse the Phase III Orders. That turn of phrase does not change the fact that she is directly attacking the validity of the orders as being prohibited under the

---

[9] *See* 15B Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3916 (2d ed.) (hereinafter "Wright & Miller").

No. 23-30633

PLRA." The Sheriff has not shown that the district court refused to modify or dissolve an injunction. Rather, the court's orders "'simply implement[]'" the consent decree "'without changing the command of the injunction.'" *In re Deepwater Horizon*, 793 F.3d at 491 (quoting *Switz. Cheese Ass'n, Inc.,* 385 U.S. at 24–25). Accordingly, the court's orders were an interpretation of the stipulated relief. *Id.* To suggest otherwise would open a "floodgate" of repetitive and untimely appeals. *Id.*

To be clear, this does not mean that the parties are prohibited from filing a proper motion to terminate under the PLRA. But, as discussed in Part B, the Sheriff has not done so. Even assuming *arguendo* that the district court's observation was a modification of an injunction, or refusal to dissolve an injunction, the Sheriff has not pointed to any "'serious, perhaps irreparable, consequence[s].'" *In re Deepwater Horizon*, 793 F.3d at 492 (quoting *Gardner*, 437 U.S. at 480).[10] However, there *are* well-documented risks of inadequate housing and care for detainees at Orleans Parish Prison. *Anderson I*, 38 F.4th at 475 (explaining that the jail was still "not adequate for detainees with mental-health needs or who were suicidal"). Indeed, despite the consent decree requiring the Sheriff's Office to implement systemic and durable reforms, the independent monitor has reported that the jail "has regressed slightly" and "the same deficiencies are likely to continue to be noted time and time again." Hence, the 2019 Orders and CEA followed.

---

[10] On this, the dissent misconstrues this opinion. *Post* at 3 n.5. First, the issue is that the Sheriff has not satisfied any evidentiary burden. Second, it is false to suggest that the district court ordered the construction of a prison. Anyone familiar with this case can recall the factual and procedural history that refutes any assertion that courts have ordered the construction of a prison. Third, and to reiterate, *the Sheriff does not challenge the 2013 consent decree*. Instead, she challenges the judicially enforceable orders that came years later. That argument was foreclosed in *Anderson I*. Finally, the dissent raises arguments concerning "irreparable consequences" that the Sheriff herself has not raised in the district court or on appeal. Thus, we do not entertain them here.

No. 23-30633

In addition, we are bound by *Anderson I*. The law of the case doctrine "generally prevents reexamination of issues of law or fact decided on appeal 'either by the district court on remand or by the appellate court itself on a subsequent appeal.'"[11] *Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir. 1990) (quoting *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985); *see Arizona v. California*, 460 U.S. 605, 618 (1983)). However, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" *In re AKD Invs.*, 79 F.4th 487, 491 (5th Cir. 2023) (quoting *Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001)).

In *Anderson I*, the City moved to "suspend all orders regarding the programming, design, and construction of a new Phase III jail facility" because, *inter alia*, the PLRA purportedly prohibits the construction of Phase III. The magistrate judge conducted a two-week hearing on that motion and recommended that the court deny the City's motion. It did so. Then, we affirmed the district court's decision. Although we declined to rule on the merits of the City's PLRA argument, we nonetheless concluded that the City's post-judgment motion under "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests," and we lacked jurisdiction over "the substance of the January and March 2019 orders." *Anderson I*, 38 F.4th at 478, 479. "Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits,

---

[11] In addition to the law of the case doctrine, we are bound by the rule of orderliness: "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (internal citations and quotation marks omitted). Thus, we cannot ignore the well-settled principles that *Anderson I* applied to the facts of this exact case.

otherwise those limits become essentially meaningless." *Id.* (citation omitted).

Now, the Sheriff makes the same argument but with different procedural mechanisms: motions to terminate and stay all orders regarding the construction of Phase III. We have already denied the motions to stay[12] Phase III, and we now address the motion to terminate.

Again, "we have jurisdiction to review the denial of the . . . motion, but not the underlying . . . orders." *Anderson I*, 38 F.4th at 477-78. The Sheriff's appeal is "restricted to the questions properly raised by the post-judgment motion" and it does "not extend to revive lost opportunities to appeal the underlying judgment." 15B Wright & Miller § 3916 (quoting *Anderson I*, 38 F.4th at 478); *see Bowles v. Russell*, 551 U.S. 205, 209 (2007) ("This Court has long held that the taking of an appeal within the prescribed time is mandatory and jurisdictional" (internal citations and quotation marks omitted)). Just as "a Rule 60(b) motion may not be used as a substitute for a timely appeal from the judgment or order from which the motion seeks relief," a purported motion to terminate under the PLRA cannot "be used as an end run to effect an appeal outside the specified time limits." *Id.* at 478 (internal quotation and citation omitted). The decision in *Anderson I* applies here "by 'necessary implication'" as both cases concern the well-settled principles of post-judgment proceedings. *In re AKD Invs.*, 79 F.4th at 491 (quoting *Alpha/Omega Ins. Servs.*, 272 F.3d at 279); *see* 15B Wright & Miller § 3916. Contrary to the Sheriff's suggestion, the law of the case does not change based on the name of the motion "for that would exalt nomenclature over substance." *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 272 (1978) (Blackmun, J., concurring). This is particularly true

---

[12] *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

when the substance of the motions are identical. The issue here and in *Anderson I* was whether the PLRA prohibits the 2019 Orders and Stipulated Order. Like *Anderson I*, "the timely notice of appeal in a civil case is a jurisdictional requirement" and we cannot create an exception for the Sheriff's motion as that time has long passed. *Funk v. Stryker Corp.*, 631 F.3d 777, 781 (5th Cir. 2011). Accordingly, we lack appellate jurisdiction to review the substance of the 2019 Orders and Stipulated Order.[13]

The dissent argues that the law of the case doctrine does not apply. In so doing, it mischaracterizes the position of the United States and the orders of the district court. *Post* at 4. In reviewing the court's denial of the Sheriff's motion, we find that the Sheriff made the same post-judgment arguments as the City did in *Anderson I*. The Sheriff later clarified that she is relying on a different subsection of the PLRA. Accordingly, what the United States and district court correctly explained is: "to the extent that the Sheriff was attempting to revive the City's already-rejected argument that the 2019 Orders violated Section 3626(a)(1)(C) the PLRA, such argument was precluded under the law of the case doctrine." Then, the district court and the United States agreed that the law of the case doctrine does not bar the Sheriff's private settlement agreement argument regarding Section 3626(c)(2), (g)(6). The United States contends that the Sheriff's argument "nonetheless fails for other reasons." Here, we do not reach those other reasons because we lack jurisdiction. Indeed, as the United States principally argued, this court lacks appellate jurisdiction over the substance of the 2019

---

[13] The dissent concedes that the Sheriff's motion seeks relief from the 2019 Orders but nonetheless suggests that the post-judgment rule addressed in *Anderson I* has no impact on this appeal. *Post* at 7. But "[o]bviously, this well-established rule is critical to this appeal." *Anderson I*, 38 F.4th at 478. The fact that the Sheriff attempts to circumvent procedural history and rules under the guise of a PLRA motion does not mean we can ignore *Anderson I*.

No. 23-30633

Orders, and the PLRA is not a proper vehicle to challenge them. Thus, because we lack jurisdiction, we do not reach the issue of private settlement agreements.

## B.

Next, we address the procedural basis for the district court's denial of the Sheriff's motion to terminate. Again, in *Anderson I* we concluded that we may review the district court's denial of the City's motion, but it would be improper to review the 2019 Orders and Stipulated Order. "Interpreting effective unreviewability to permit appeal in this case would signify that each time [the Sheriff or City] could show a handful of claims arguably impacted by the district court's interpretation of the [Stipulated] Agreement, it could immediately appeal to this court. The limited benefits of such unrestricted access to the appellate court are outweighed by the attendant systemic disruption and institutional cost." *See In re Deepwater Horizon*, 793 F.3d at 489 (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 884 (1994)).

As a procedural matter, Plaintiffs and the United States argue that the Sheriff has not presented a proper basis for a motion to terminate under Section 3626(b) of the PLRA. The district court agreed. The Sheriff argues that the 2019 Orders and Stipulated Order impermissibly enforce a private settlement agreement under the PLRA. On the other hand, the City, which already made similar arguments in *Anderson I*, states that "its legal challenges to the Phase III facility have come to a definitive end . . . and the City does not now espouse a position contrary to the prior rulings of the magistrate, district or appellate courts in this appeal."

To begin, simply naming a document "motion to terminate" does not automatically establish a basis for jurisdiction or relief. *See, e.g., Moody Nat'l Bank of Galveston v. GE Life & Annuity Assurance Co.*, 383 F.3d 249, 251 (5th

No. 23-30633

Cir. 2004) ("As an initial matter, it is important to make clear that the fact that GE labeled its motion as a Rule 59(e) motion to alter or amend is immaterial; a motion's substance, and not its form, controls."). Moreover, it is true that a district court's denial of a *proper* motion to terminate relief under Section 3626(b)(1)(A) is subject to appeal. But, as Plaintiffs argue, the Sheriff's filing is a "motion to terminate" in name only.[14]

Section 3626(b) establishes the parameters in a prison conditions civil action for "termination of relief." "Although the PLRA entitles [a party] to terminate remedial orders such as these after two years unless the district court finds that the relief 'remains necessary to correct a current and ongoing violation of the Federal right,' § 3626(b)(3), [the Sheriff] has not attempted to obtain relief on this basis." *Brown v. Plata*, 563 U.S. 493, 515 (2011).

The Sheriff claims instead that the March 2019 Order and "associated orders" violate the PLRA. *See Moody Nat'l Bank of Galveston*, 383 F.3d at 251.[15]

---

[14] The dissent relies on *Ruiz v. United States* to argue that the Sheriff's motion is a proper vehicle for challenging the 2019 Orders and Stipulated Order. *Post* at 7. In *Ruiz*, the defendants moved to terminate a consent decree and this court had jurisdiction pursuant to § 1292(a)(1). *Ruiz*, 243 F.3d at 945. Here, it bears repeating that the Sheriff has not moved to terminate the consent decree. Rather, she challenges the Stipulated Order and 2019 Orders. Thus, *Ruiz* does not support the dissent's contention that we may review those orders.

[15] In addition, the Sheriff argues that she cannot be bound by her predecessor's prior decisions as to the Stipulated Order and CEA. Specifically, she contends that even if the district court's orders are enforceable, they are not enforceable against her because she was not a party to the stipulated agreement. Because that argument is a procedural matter, we will briefly address it. In actions against defendants in their official capacity, individual office holders may come and go, but the defendant never changes because the office, not the person occupying it, is the party. *See* Fed. R. Civ. P. 25(d), 1961 Advisory Committee Note; *see also, e.g., Deauville Assoc. v. Murrell*, 180 F.2d 275, 277 (5th Cir. 1950)(explaining that even if a party has changed, such as in the case of a transfer or

No. 23-30633

The Supreme Court has made clear that Section 3626(b) acts as a mechanism for termination of prospective relief when such relief is no longer necessary to correct a violation of a federal right. *Id.* Our court has done the same. For example, in *Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001), we explained that, in deciding whether to grant a motion to terminate, a district court should consider whether a "current and ongoing violation" exists, based on "conditions in the jail at the time termination is sought . . . to determine if there is a violation of a federal right." *See also Ruiz*, 243 F.3d at 950-951; *Brown v. Collier*, 929 F.3d 218, 253 (5th Cir. 2019) (affirming district court's termination of a consent decree that was no longer "necessary to correct current and ongoing violations" of federal law); *Guajardo v. Texas Dep't of Crim. Just.*, 363 F.3d 392, 398 (5th Cir. 2004) (per curiam) (same). Our sister circuits agree. *See, e.g., Porter v. Clarke*, 923 F.3d 348, 367 (4th Cir. 2019), *as amended* (May 6, 2019) ("Congress's use of 'current and ongoing' in Section 3626(b)(3) demonstrates that it knew how to "clear[ly] command" that courts may not use their equitable authority in the case of a violation that is not 'current and ongoing.'").

In this case, Sheriff Hutson has not argued that the relief is no longer necessary to correct the existing constitutional violations. Rather, she alleges that Section 3626(a)(1)(C) prohibits the existence of the 2019 Orders and Stipulated Order. But nothing in Section 3626(b) supports this argument. Thus, the "motion to terminate" fails procedurally because it neither provides a basis for the district court to grant it under Section 3626(b), nor a basis to review the 2019 Orders and Stipulated Order.

------------------------

assignment of rights under Federal Rule of Civil Procedure 25(c), that "would not justify our disturbing all prior orders and decrees entered in this controversy and unfavorable to" the current party); *In re Bernal*, 207 F.3d 595, 599 (9th Cir. 2000). Therefore, the Sheriff fails to furnish any legal support for this argument, and it is foreclosed.

No. 23-30633

Here, the Stipulated Order provided, *inter alia*, that "the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for . . . appropriate housing for prisoners with mental health issues and medical needs." The Stipulated Order and March 2019 Order each included a finding of compliance with the limitations set forth in § 3626(a). This court has already rejected the argument that the unchanged text of the PLRA somehow constitutes a circumstance justifying the suspension of the 2019 Orders and the Stipulated Order. *See Anderson I*, 38 F.4th at 477-78. Moreover, the district court's 2023 order includes the PLRA findings that "prospective relief" extends "no further than necessary to correct the violation of the Federal right" in this case. The district court has also made abundantly clear that it did not order the construction of a prison, but rather enforced the Stipulated Order. Thus, the district court ordered the parties to effectuate the plans they had voluntarily and contractually bound themselves to undertake.[16] Therefore, the district court has not erred in denying the motion.

## III.

Even assuming *arguendo* that we could reach the merits of the Sheriff's claim, the lack of effort and time implementing Phase III would undermine a motion for termination. The Supreme Court has explained that appeals such as this one are premature.

> When a court attempts to remedy an entrenched constitutional violation through reform of a complex institution, such as this . . . prison system, it may be necessary in the ordinary

---

[16] The dissent chooses to ignore those contractual obligations by suggesting that the Sheriff may turn back the clock to reconsider all orders that her predecessor stipulated and agreed to. No cases support such a broad interpretation of the PLRA and appellate jurisdiction. Perhaps that is why a panel, including JUDGE SMITH, denied the Sheriff's motions to stay the construction of Phase III twice.

16

No. 23-30633

> course to issue multiple orders directing and adjusting ongoing
> remedial efforts. Each new order must be given a reasonable
> time to succeed, but reasonableness must be assessed in light
> of the entire history of the court's remedial efforts.

*Brown*, 563 U.S. at 516. Given that Phase III is "in progress at 12.82% complete" and the Sheriff and City have been slow to effectuate any stipulated remedy, the record shows that a motion to terminate is at best premature and we lack jurisdiction to review it.

We therefore DISMISS this appeal.

Jerry E. Smith, *Circuit Judge*, dissenting:

The majority wants to build a prison. Though the law and the facts stand in its way, that hardly thwarts its zealous resolve. So it takes a hatchet to the Prison Litigation Reform Act ("PLRA") and turns a blind eye to binding circuit precedent.

The result? An opinion with reasoning that, at every turn, is fatally compromised. Some parts are totally unhinged. And the remainder is incomprehensible. I respectfully dissent.

## I.

Twice the majority acknowledges that "we have jurisdiction to review the denial of the . . . motion." Op. at 6, 10 (quotation omitted). *A fortiori*, it has conceded that, instead of dismissing, it must consider the merits of the motion to terminate.

So, even before we consider any of the majority's assertions in detail, already shaky is its decree that the appeal be dismissed "for lack of jurisdiction." Op. at 14. The majority has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *NOPSI v. Council of the City of New Orleans*, 491 U.S. 350, 358 (1989) (quotation omitted). Frivolous and futile are the majority's attempts to abandon its "virtually unflagging obligation . . . to exercise [its] jurisdiction." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).

*First*, the majority tries to recast the district court's denial merely as an "interpretation" of its prior orders. Op. at 8–9. That is an epic blunder. The majority has totally overlooked the fact that as part of its order denying Hutson's motion to terminate, the district court's entered "the terms of the Cooperative Endeavor Agreement ("CEA") previously negotiated by former . . . Sheriff Gusman . . . and the City." ROA.19500.

The CEA contains new terms purporting to bind Orleans Parish Sher-

iffs Office ("OPSO") and the city to various terms and obligations regarding the construction of the Phase III facility.[1]  None of the CEA's terms was contained in the district court's previous orders, which merely required the city to construct Phase III.  But its latest specifies *precisely how* the city must construct that new facility.

Now, per court order, Phase III construction must "proceed pursuant to the . . . terms of the CEA."  ROA.19519.  That plainly affects the substantive relief sought in the complaint.[2]  So it is, by definition, a further grant of injunctive relief that provides an independent basis for appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

*Second*, the majority's recharacterizing of the refusal to terminate relief as a "modification" doesn't hold any water.  *See* Op. at 8–9.  Per *Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001), "[a] district court's order denying [a] motion[] to terminate [a] consent decree" is "a refusal to dissolve an injunction," *see id.* at 945.[3]

No wonder the order denying the motion to terminate contains all of the requisite features of an injunction.[4]  It (1) is directed to Hutson—a party

---

[1] Included in those terms, *inter alia*, is the requirement that "[a]ny party to [the CEA]," including "any subcontractors," "take all necessary affirmative steps to assure that minority businesses[] . . . are used when possible."  ROA.19347.  "Affirmative steps must include," *inter alia*, "[a]ssuring that . . . minority businesses[] . . . are solicited whenever they are potential sources."  ROA.19347–48.  *But see Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 208 (2023) ("Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." (quotation omitted)).

[2] *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (ordering the city to include two particular companies on its non-consent tow list "provides substantive relief" and "is therefore an injunction appealable under [§ ]1292(a)(1)").

[3] *See also Ruiz v. Scott*, Nos. 96-21118, 97-20068, 1997 WL 533095, at *6 (5th Cir. Aug. 6, 1997) (unpublished) ("[S]hould the district court deny, in whole or in part, defendants' motion to terminate, [they] may then appeal under [§] 1292(a)(1).").

[4] Injunctions are "[o]rders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion."  *Police Ass'n of New Orleans Through Cannatella v.*

to the proceedings—and (2) expressly contemplates enforcement through "cit[ations] for contempt" and "severe sanctions."  Further, it (3) both (a) refuses to dissolve any part of the consent judgment and (b) purports further to enjoin OPSO by entering it into an agreement with the city that "set[s] conditions of construction for the Phase III facility" in furtherance of the consent judgment's aims.  Thus, the court has appellate jurisdiction to review the denial of the motion to terminate under § 1292(a)(1), which provides that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders . . . refusing to dissolve or modify injunctions."

*Third*, two judges on a panel cannot exclude Hutson's motion to terminate by creating a one-off exception to our statutory appellate jurisdiction.  Any such attempt is bound to crash and burn.  "When assessing an order's appealability, courts should not engage in an 'individualized jurisdictional inquiry.'"  *In re Deepwater Horizon*, 793 F.3d 479, 485 n.5 (5th Cir. 2015) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)).  "Instead, the focus should be on the entire category to which a claim belongs."  *Id.* (cleaned up).

Denials of motions to terminate under the PLRA are treated as "refusal[s] to dissolve an injunction."  *Ruiz*, 243 F.3d at 945.  Thus, the denial of Hutson's motion belongs to a class of orders for which appellate jurisdiction lies.  That alone ends the jurisdictional dispute.  Pointless is the majority's attempt to differentiate Hutson's particular motion from the class of motions to which it belongs.[5]

---

*City of New Orleans*, 100 F.3d 1159, 1166 (5th Cir. 1996) (quoting 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3922 (West)) (alteration in original).

[5] That includes the majority's flippant assertion that the denial of Hutson's motion does not impose "any serious, perhaps irreparable, consequences." Op. at 9 (cleaned up).

Yes, you read that right—according to the majority, it is no big deal if a federal court forces the political subdivision of a coordinate sovereign to build a prison, in conformance with that court's specifications, under express threats of "severe sanctions" and "contempt

*Lastly*, the majority posits that it is bound by the law-of-the-case doctrine and the rule of orderliness, because the decision in *Anderson I*, 38 F.4th 472 (5th Cir. 2022), "concern[s] the well-settled principles of post-judgment proceedings." Op. at 11 (citations omitted).

As to that, the majority stands alone. That position is frivolous, and the DOJ flatly rejects it: "The United States [] agrees that the law of the case doctrine does not bar this argument."

For good reason too, as *Anderson I* considered only the City of New Orleans's direct appeal of a Rule 60(b)(5) motion for relief from a judgment or order. *See* 38 F.4th at 478. No other independent issue of law was appealed by the city. *See id.* at 479 ("[T]he only basis for appeal is the Rule 60(b) motion."). So nothing in *Anderson I* bears on this panel's jurisdiction over a motion proceeding under a completely distinct procedural mechanism—*i.e.*, § 3626(b) of the PLRA.

The majority's position also fails at an even more fundamental level. Namely, it relies on the assumption that the motion to terminate constitutes a direct attack on the original consent judgment itself. But Hutson's motion does nothing of the sort.

The consent judgment provides prospective relief for unconstitutional prison conditions. That relief is implemented and enforced by the district court through its continuing supervisory jurisdiction. Such jurisdiction, however, is limited—the court cannot "grant[] further relief [that] exceed[s] its

---

of court." ROA.19520.

So unhinged and so indefensible, the majority's assertion hardly merits a response. That's because the "serious consequence" prong from *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), "does not apply to orders specifically granting or denying injunctions," *Atwood Turnkey Drilling, Inc. v. Petroleo Brasilerio, S.A.*, 875 F.2d 1174, 1176 (5th Cir. 1989). "Orders which explicitly grant or deny injunctive relief are immediately appealable as of right; no additional finding of immediate, irreparable injury is required." *Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010) (cleaned up). Thus, the order denying Hutson's motion to terminate is "appealable as of right, right away." *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992) (cleaned up).

remedial authority." *Smith v. Sch. Bd. of Concordia Parish*, 906 F.3d 327, 335 (5th Cir. 2018).

Relevant here, the PLRA limits *both* (1) the scope and extent of relief that courts can grant in prison conditions cases, *see* 18 U.S.C. § 3626(a)(1)(A), and (2) the court's power to continue enforcing (*i.e.*, not terminate) relief that it had previously granted, *see* § 3626(b). Put another way, the provisions in PLRA are "restrict[ions on] courts' authority to issue and enforce prospective relief." *Miller v. French*, 530 U.S. 327, 347 (2000). Relief ordered in excess of *either* (1) or (2) is necessarily an *ultra vires* act by the district court.

Motions to terminate must therefore be granted where the continued enforcement of pre-existing relief—*irrespective* of any prior determinations of validity—fails to satisfy § 3626(b)'s requirements. An order issuing prospective relief can be *both* (1) completely valid and enforceable at the time it was ordered *and* (2) subsequently terminable for providing relief beyond the scope permitted by the PLRA.

Consequently, Hutson's motion to terminate can be granted even if we assume, *arguendo*, that the prior orders are fully valid and enforceable. *A fortiori*, Hutson's motion is not a direct attack on the validity of the consent judgment. Baseless is the majority's claim to the contrary.

The majority's position becomes even more untenable if we take as given, *arguendo*, its assertion that a motion to terminate the continuation of non-PLRA-compliant relief is a mere "end run to effect an appeal" of the order that initially granted such relief. Op. at 11 (cleaned up). Per the reasoning of the majority, Hutson's motion would be timely only if she appealed within sixty days of the district court's 2019 orders. *See* Fed. R. App. P. 4(a)(1)(B).[6]

---

[6] *See* Op. at 11 ("the timely notice of appeal in a civil case is a jurisdictional requirement and we cannot create an exception for the Sheriff's motion as that time has long passed.") (cleaned up).

The majority's groundbreaking rule proves way too much, as it would turn the *entirety* of § 3626(b) into a dead letter. That's because the PLRA sets a minimum amount of time that must pass before a motion to terminate can be filed:

> (i)    2 years after the date the court granted or approved the prospective relief;
>
> (ii)    1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or
>
> (iii)    in the case of an order issued on or before the date of enactment of the [PLRA], 2 years after such date of enactment.

§ 3626(b)(1)(A)(i)–(iii).

None of the requisite time periods in § 3626(b)(1)(A) falls within the initial time to appeal directly an order granting relief. *See* FED. R. APP. P. 4(a)(1)(A)–(B). So, per the majority's rationale, orders prescribing prospective relief are *interminable* once the time for direct appeal has expired—thereby erasing PLRA motions to terminate from the U.S. Code.[7]

In sum, this court's appellate jurisdiction is indisputably secure. The majority is duty-bound to exercise that jurisdiction and decide the merits of Hutson's motion to terminate.

## II.

The majority claims that "the 'motion to terminate' fails procedurally because it [does not] provide[] a basis for termination under Section 3626(b)" of PLRA. Op. at 13. That is patent error—and plainly so, too—had the majority carefully considered the text of the statute.

### A.   *Burden Allocation*

PLRA provides that "prospective relief . . . *must* be terminated on the

---

[7] Nor does Rule 60(b) get the majority out of its legal quandary. The PLRA expressly provides that motions to terminate exist *in addition to* "otherwise . . . legally permissible" grounds for modification and termination. § 3626(b)(4).

motion of any party,"[8] *unless* the district court finds that the prospective relief

> (1) remains necessary to correct a current and ongoing violation of the Federal right,
> (2) extends no further than necessary to correct the violation of the Federal right, *and* . . .
> (3) is narrowly drawn and the least intrusive means to correct the violation.[[9]]

What must Sheriff Hutson do to move for termination of relief? Nothing but show the requisite passage of time—*e.g.*, "2 years after the date the court granted or approved the prospective relief."[10]

Hutson has done just that. Her motion expressly invoked § 3626(b)-(1)(A) and referenced the "Orders of January 25, 2019 and March 18, 2019 Regarding Phase III Jail Facility." More than two years have elapsed since "the date the court granted or approved" those orders. § 3626(b)(1)(A)(i). Thus, Hutson has carried her burden of proof by showing the requisite passage of time. *See Guajardo*, 363 F.3d at 395. She need do nothing more.

From that point onward, the PLRA shifts the burden to the parties *opposing* termination. It is their job—not Hutson's—to provide sufficient proof to support the findings required by § 3626(b)(3).[11] Put another way, the private plaintiffs and the DOJ—alone—must prove that the prospective relief complies with the § 3626(b) factors.

So the majority turns PLRA upside down when it faults Hutson for failing to provide a basis for termination under § 3626(b) because she "ha[d]

---

[8] *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019) (emphasis added); *see* § 3626(b)(1)(A); *see also Ruiz*, 243 F.3d at 950.

[9] § 3626(b)(3) (cleaned up) (emphasis added).

[10] § 3626(b)(1)(A)(i); *see also Guajardo v. Tex. Dept. of Crim. Just.*, 363 F.3d 392, 395 (5th Cir. 2004) (per curiam).

[11] *Brown*, 929 F.3d at 228; *see also Guajardo*, 363 F.3d at 396 (explaining that the burden of proving the requisite § 3626(b) findings "is obviously on the party opposing termination").

not a[verred] that the relief is no longer necessary to correct constitutional violations." Op. at 13. The burden of proving the requisite § 3626(b) findings "is obviously on the party opposing termination." *Guajardo*, 363 F.3d at 396.

B.     *Requisite Findings*

Prospective relief *must* be terminated unless "a court makes specific written findings regarding the continuing necessity of [such] relief." *Ruiz*, 243 F.3d at 950; *see also supra* part II.A. The three findings must be "written" and "based on the record." § 3626(b)(3). "It is not enough . . . simply [to] state in conclusory fashion that the requirements of the consent decrees satisfy those criteria." *Castillo*, 238 F.3d at 354 (quoting *Cason*, 231 F.3d at 784–85).

To make the first finding—that is, "a current and ongoing violation"—the court "must look at the conditions in the [institution] at the time termination is sought." *Id.* at 353. Violative conditions that have "existed in the past," or those that "may possibly occur in the future," are wholly inapposite. *Id.* In other words, nothing but violations "exist[ing] at the time the district court conducts the § 3626(b)(3) inquiry" will suffice. *Id.* (quoting *Cason*, 238 F.3d at 784).

The second and third findings require the district court to find "that *each* requirement imposed . . . satisfies the need-narrowness-intrusiveness criteria." *Id.* at 354 (quoting *Cason*, 231 F.3d at 784–85) (emphasis added). Those findings must be "particularized" and made "on a provision-by-provision basis." *Id.* (quotation omitted). Additionally, they must be based solely on "the nature of the *current and ongoing* violation." *Id.* (quotation omitted) (emphasis added).

Relief must be terminated unless it "*currently* complies with the need-narrowness-intrusiveness requirements." *Id.* (emphasis added). That is, the court *must* grant the motion to terminate any provision granting relief not supported by all three requisite findings. *Ruiz*, 243 F.3d at 950. The denial of Hutson's motion falls far short of the "specific standards" that the district

court was required "to . . . follow[] when [it] consider[ed] whether to ter-
minate a consent decree providing for prospective relief." *Id.*

For starters, the magistrate judge's report and recommendation lacks
any of the analysis required under § 3626(b)(3). The closest the R&R gets to
any finding regarding the necessity of relief is a fleeting reference to years'-
old findings from the 2019 orders themselves.

Similarly, much of the order relies on past findings. Just like the R&R,
the order explicitly relies on years-old findings from its March 2019 order.
Indeed, the court expressly relied on its having "*already found* that proceeding
with Phase III is necessary to remedy a constitutional violation."

Plainly, *past* findings of compliance with PLRA's limitations on pro-
spective relief are insufficient to comply with § 3626(b)'s requirements. *Cas-
tillo* held—in no uncertain terms—that courts must make "make *new* find-
ings" based on "the conditions . . . at the time termination *is sought*, not at
conditions that existed in the past." 238 F.3d at 353–54 (quotation omitted)
(emphasis added). Nothing in the district court's denial shows that any of
the prospective relief "*currently* complies with the need-narrowness-
intrusiveness requirements, given the nature of the *current* violations." *Id.*
at 354 (emphasis added).

That conclusion remains, notwithstanding the court's two fleeting
references to a monitors' report post-dating the 2019 orders. Its first merely
restates the monitors' conclusion that "the design and construction of Phase
III" is "[a]n important part of the long-term solution to the lack of compli-
ance with the consent judgment in the areas of medical and mental health."
Likewise, the second blindly regurgitates the monitors' opining that "hous-
[ing] in [Orleans Justice Center ("OJC")] . . . is inadequate for the housing
of [inmates with acute mental health issues]."

Even considering those two references, the court's analysis still fails
to meet § 3626's requirements in any regard.

*First*, it never identifies any specific "conditions in the [OPSO system] at the time termination was requested" that constituted "a 'current and ongoing' violation of a federal right." *Castillo*, 238 F.3d at 354.

*Second*, not once does it mention whether OPSO was failing to comply with any of the terms of the consent judgment. The closest it gets is its reference to the monitors' report. But even that just alludes to "the areas of medical and mental health." Such a conclusory statement—made at the highest levels of generality—provides zero insight into which of the consent judgment's sixty-nine provisions relating to health or mental care might continue to satisfy § 3626(b)(3)'s requirements.

*Third*, there is no analysis showing that *any* of the consent judgment's conditions, or the relief previously ordered by the court, is still needed to cure ongoing constitutional violations. At most, its quoting the monitors' report merely suggests that Phase III *can* contribute to compliance with *the consent judgment's requirements*. But sufficiency is not necessity—nothing guarantees that the report's recommendations or the initial consent judgment continues to track constitutional minima, as § 3626(b) requires.[12]

In short, the court's analysis leaves us with no idea *what* the current violations are (if any), *how* any violations are addressed by the consent judgment's conditions (if they are at all), or *why* those conditions are the least intrusive means to remedy the violation.

So its conclusion—that "'no other option' short of ordering the parties to proceed pursuant to the previously[ ]negotiated terms [regarding the Phase III construction] w[ould] correct the ongoing violation of plaintiffs' federal rights"—"does not reach the needed level of particularization" and

---

[12] That's because some of the conditions specified in the report might not be *per se* violations of any constitutional right. *See Castillo*, 238 F.3d at 354. Improving conditions may therefore render previously PLRA-complaint requirements no longer necessary and, thus, properly terminable. After all, "[t]he Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up).

"is not supported with enough evidence in the record," *Castillo*, 238 F.3d at 354 (cleaned up). The PLRA does not allow the district court to deny termination of relief merely by speculating that "there is no reason to think that Phase III is no longer necessary."

## C. *Termination Is Required as a Matter of Law*

Termination of relief is the only valid course of action—even if we assume, *arguendo*, that the district court's findings were not plainly deficient, *but see supra* part II.B. That's because the district court would commit *per se* error in finding that the prospective relief enforced in the *status quo* satisfies § 3626(b)(3)'s criteria.

Section 3626(b)(3) is constrained by § 3626(a)(1)(C), which applies to all parts of § 3626. Section 3626(a)(1)(C) expressly provides that "[n]othing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts."

We must therefore construe situations in which relief may continue under § 3626(b)(3) consistently with § 3626(a)(1)(C)'s limitations.[13] So the kinds of relief that have been identified as unauthorized in § 3623(a)(1)(C)—including "order[ing] the construction of prisons"—can never qualify as preliminary relief that, in the words of § 3623(a)(1)(C), "shall not terminate" under § 3623(b)(3).

Were that not so, a district court would be required to *continue enforcing* (*i.e.*, refuse to terminate) relief that it has no authority to continue providing. That would indisputably butcher the plain meaning of the statutory text. Section 3626(a)(1)(C) means what it says when it uses the phrase

---

[13] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 179–181 (2012) (harmonious-reading canon).

"[n]othing in this section."[14]

Even if the district court makes more findings on remand, it cannot find that the prospective relief enforced in the status quo satisfies § 3626(b)(3)'s requirements. Section 3626(a)(1)(C) "has restricted [the district] court['s] authority to issue and enforce prospective relief." *Miller*, 530 U.S. at 347.[15] Thus, the court necessarily acts *ultra vires* if it continues enforcing prospective relief relating to the construction of the Phase III facility. Granting Hutson's motion to terminate is therefore the only valid course of action.

\*     \*     \*     \*     \*

Albeit well intentioned, a majority of two has decided that the construction of a new prison is "a cause so compelling" that the law can be skirted.[16] To the contrary, however, this court's jurisdiction is secure, and the motion to terminate should have been granted. I respectfully dissent.

---

[14] *See United States v. Rayo-Valdez*, 302 F.3d 314, 318 (5th Cir. 2002) ("It is a basic tenet of statutory construction that "it is necessary to give meaning to all [] words and to render none superfluous.").

[15] *See also Saahir v. Estelle*, 47 F.3d 758, 762 (5th Cir. 1995) ("Just as the scope of the consent decree does not enlarge the court's jurisdiction, the way the parties agreed to implement the remedy contained in the consent decree likewise cannot affect the jurisdictional bounds of the federal courts."); *Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015) ("Jurisdiction in an ongoing institutional reform case 'only goes so far as the correction of the constitutional infirmity.'" (quoting *United States v. Texas*, 158 F.3d 299, 311 (5th Cir.1998)).

[16] *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at \*37 (5th Cir. Feb. 17, 2022) (unpublished) (cleaned up) (Smith, J., dissenting).