# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2025

Lyle W. Cayce
Clerk

No. 23-30633

Kent Anderson; Steven Dominick; Anthony Gioustavia;
Jimmie Jenkins; Greg Journee; Richard Lanford;
Leonard Lewis; Euell Sylvester; Lashawn Jones,

*Plaintiffs—Appellees,*

United States of America,

*Intervenor Plaintiff—Appellee,*

*versus*

Susan Hutson, *Sheriff, Orleans Parish, Successor to Marlin N. Gusman,*

*Defendant/Third Party Plaintiff—Appellant,*

*versus*

City of New Orleans,

*Third Party Defendant—Appellee.*

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-859

<u>ON PETITION FOR REHEARING EN BANC</u>

Before Smith, Wiener, and Douglas, *Circuit Judges*.

Per Curiam:

Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

In the en banc poll, six judges voted in favor of rehearing, Judges Jones, Smith, Richman, Ho, Duncan, and Oldham, and eleven judges voted against rehearing, Chief Judge Elrod, and Judges Stewart, Southwick, Haynes, Graves, Higginson, Willett, Engelhardt, Wilson, Douglas, and Ramirez.

James C. Ho, *Circuit Judge*, dissenting from denial of rehearing en banc:

The panel majority dismissed this appeal for lack of jurisdiction. *See Anderson v. Hutson*, 114 F.4th 408, 421 (5th Cir. 2024). I would reach the merits and reverse the district court, and accordingly voted to rehear this obviously important case en banc. To begin with, we have jurisdiction under 28 U.S.C. § 1292(a)(1), because the district court's denial of the motion to terminate is an appealable interlocutory order. *See Ruiz v. United States*, 243 F.3d 941, 945 (5th Cir. 2001); *Abbott v. Perez*, 585 U.S. 579, 594 (2018). And as to the merits, the decision of the district court does not comply with the Prison Litigation Reform Act. *See* 18 U.S.C. §§ 3626(a)(1)(C), (b)(3); *Ruiz*, 243 F.3d at 950. My dissenting colleagues detail the substantive legal reasons why I reach these conclusions, and I fully agree with that analysis.

Andrew S. Oldham, *Circuit Judge*, joined by Jones, Smith, and Duncan, *Circuit Judges*, dissenting from the denial of rehearing en banc:

The Prison Litigation Reform Act prohibits federal courts from ordering the construction of prisons or enforcing consent decrees and settlement agreements that provide for the construction of prisons. Such prospective relief exceeds the remedial authority of federal courts. *See Miller v. French*, 530 U.S. 327, 347 (2000). The district court nevertheless ordered the New Orleans Parish Sheriff and the City of New Orleans to build a prison and then denied the Sheriff's motion under the statute to terminate that prospective relief.

Bizarrely, the panel in this case dismissed the Sheriff's appeal for lack of appellate jurisdiction. That dismissal was egregiously wrong; defied landmark jurisdictional precedents stretching from *Hayburn's Case* to *Steel Co.*; and "force[d] the political subdivision of a coordinate sovereign to build a prison, in conformance with that court's specifications, under express threats of 'severe sanctions' and 'contempt of court'" in violation of federal law. *Anderson v. Hutson*, 114 F.4th 408, 422 n.5 (5th Cir. 2024) ("*Anderson II*") (Smith, J., dissenting). The en banc court should have granted rehearing. I respectfully dissent.

## I

## A

Before getting to the facts and procedural history of this case, I explain (1) the nature of prospective relief in consent decrees, (2) the limits Congress has placed on federal courts' remedial authority in prison litigation, and (3) the appealability of motions to terminate prospective relief in prison litigation.

1

In federal court, a consent decree is an agreement by parties to waive their rights to litigate issues involved in their case, typically embodying a compromise where the defendant agrees to change its conduct under the supervision of the district court. *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Despite "closely resembl[ing] contracts," consent decrees also "bear some of the earmarks of judgments." *Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986). They are enforceable by a court and "subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). Hence the Supreme Court's comment that consent decrees have a "hybrid nature." *Int'l Ass'n of Firefighters*, 478 U.S. 501 at 519.

Consent decrees must protect federal interests, and they are generally limited to addressing the "general scope of the case made by the pleadings," and they must "further the objectives of the law upon which the complaint was based." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Consent decrees between private parties and States or political subdivisions have arisen in many areas of federal law, and they often involve prospective injunctive relief requiring States or political subdivisions to correct ongoing violations of federal rights.[1] Compliance with prospective relief issued under a consent decree is enforceable by contempt proceedings in the issuing court. *Int'l Ass'n of Firefighters*, 478 U.S. at 523.

Although consent decrees are "enforceable in the same way as court injunctions," they do not require any "determination by the court either that

---

[1] For example, *Frew* involved States' obligations under Medicaid. *Miller* and *Rufo* involved prison conditions. *International Ass'n of Firefighters* involved government hiring. And *Board of Education of Oklahoma City v. Dowell*, 498 U.S. 237 (1991), involved school desegregation.

the party thus bound had violated the law or that the relief thus granted was legally warranted." Michael W. McConnell, *Why Hold Elections? Using Consent Decrees to Insulate Policies from Political Change*, 1987 U. Chi. Legal F. 295, 296. And the prospective relief ordered under a consent decree may "sweep more broadly" than the relief a "court could have awarded after a trial." *Smith v. Sch. Bd. of Concordia*, 906 F.3d 327, 335 (5th Cir. 2018) (quoting *Int'l Ass'n of Firefighters*, 478 U.S. at 525).[2] But that scope is not unlimited. Because the court's "remedial authority" over the case "derives from the consent decree" itself, *Smith*, 906 F.3d at 334, the "scope of a consent decree" is limited to its "four corners," *Armour & Co.*, 402 U.S. at 682.

---

[2] I note that consent decrees and injunctions in institutional reform litigation "often raise sensitive federalism concerns," *Horne v. Flores*, 557 U.S. 433, 448 (2009), which loom over this case. These concerns have generated plentiful judicial criticism. *See, e.g., ibid.*; *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring) ("A structural reform decree eviscerates a State's discretionary authority over its own program and budgets and forces state officials to reallocate state resources and funds to the [court-ordered plan] at the expense of other citizens, other government programs, and other institutions not represented in court."); *Frew*, 540 U.S. at 441 ("[R]emedies outlined in consent decrees involving state officeholders may improperly deprive future officials of their designated legislative and executive powers. They may also lead to federal-court oversight of state programs for long periods of time even absent an ongoing violation of federal law."); *Valentine v. Collier*, 993 F.3d 270, 291 (5th Cir. 2021) (Oldham, J., concurring) ("[F]ederal supervision of state prisons . . . is unlawful" and "imposes grave federalism costs that should be avoided not celebrated.").

And powerful scholarly criticism too. McConnell, *supra*, at 297 ("To the extent that consent decrees insulate today's policy decisions from review and modification by tomorrow's political processes, they violate the democratic structure of government."); *see also generally* Michael T. Morley, *Consent of the Governed or Consent of the Government? The Problems with Consent Decrees in Government-Defendant Cases*, 16 U. Pa. J. Const. L. 637 (2014) (arguing that consent decrees raise Article III and separation of powers concerns).

2

Federal judges' powers to govern States via consent decrees are limited in other ways, too. In 1996, Congress passed the Prison Litigation Reform Act ("PLRA"). Pub. L. No. 104–134, 110 Stat. 1321 (codified at 18 U.S.C. § 3626). It recognized that "[f]ederal judges are particularly ill-equipped to manage state prisons." *Valentine v. Collier*, 993 F.3d 270, 294 (5th Cir. 2021) (Oldham, J., concurring). And it was designed to bring "prisoner litigation in the federal courts . . . under control." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA limits the remedial power of district courts in prison litigation by restricting "courts' authority to issue and enforce prospective relief concerning prison conditions." *Miller*, 530 U.S. at 347. "The PLRA strongly disfavors continuing relief through the federal courts; indeed, its fundamental purpose was to extricate them from managing state prisons." *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019) (quoting *Guajardo v. Tex. Dep't of Crim. Just.*, 363 F.3d 392, 394 (5th Cir. 2004) (per curiam)).

The PLRA provides "standards for the entry and termination of prospective relief in civil actions challenging conditions at prison facilities." *Miller*, 530 U.S. at 331. One of those standards is that a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* at 333 (quoting 18 U.S.C. § 3626(a)(1)(A)). That standard also applies to existing injunctions. *See ibid.* (citing 18 U.S.C. § 3626(b)(2)).

The PLRA also specifies that "[n]othing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons." 18 U.S.C.A. § 3626(a)(1)(C). And it

prohibits court enforcement of consent decrees and private settlement agreements that fail to "comply with the limitations set forth in subsection (a)," *id.* § 3626(c)(1), (2), including the prohibition against orders to construct new prisons provided by § 3626(a)(1)(C). These limitations apply irrespective of the validity of the prospective relief at the time it was issued by a court. *See Miller*, 530 U.S. at 347–48. Accordingly, the PLRA provides no way for a court to order the construction of a prison, either directly or via the enforcement of private agreements.

If prospective relief "d[id] not satisfy these standards" when it was granted, "a defendant or intervenor is entitled to '*immediate* termination' of that relief." *Miller*, 530 U.S. at 331 (emphasis added) (quoting 18 U.S.C. § 3626(b)(2)). In other words, the statute "prohibits the continuation of prospective relief" that did not meet the statute's standards *ab initio*. *Miller*, 530 U.S. at 346. And "the PLRA entitles a State to terminate" *any* prospective relief concerning prison litigation still in place "after two years." *Brown v. Plata*, 563 U.S. 493, 515 (2011); *see also* 18 U.S.C. § 3626(b)(1)(A)(i) ("In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener 2 years after the date the court granted or approved the prospective relief." (cleaned up)).

The PLRA's presumption against continuing prospective relief is so strong that it expressly authorizes mandamus actions to "remedy any failure to issue a prompt ruling on such a motion." *Id.* § 3626(e)(1). And "[a]ny motion to modify or terminate prospective relief" triggers an "automatic stay" of the prospective relief starting 30 days after the motion is filed. *Id.* § 3626(e)(2); *see also Miller*, 530 U.S. at 350 (upholding the constitutionality of the automatic stay and noting that "Congress clearly intended to make operation of the automatic stay mandatory").

The movant's right to terminate prospective relief two years after it was granted is subject to the limitations of § 3626(b)(3). That provision limits the termination of such prospective relief when "the district court finds that the relief '*remains* necessary to correct a current and ongoing violation of the Federal right,'" *Plata*, 563 U.S. at 515 (emphasis added) (quoting 18 U.S.C. § 3626(b)(3)), "extends no further than necessary to correct the violation of the Federal right," and "is narrowly drawn and the least intrusive means to correct the violation," 18 U.S.C. § 3626(b)(3). The district court's findings must be "written" and "based on the record." *Ibid.* And "the burden of proof to support these findings is obviously on the party opposing termination," *Collier*, 929 F.3d at 228 (quoting *Guajardo*, 363 F.3d at 396), not the movant.

### 3

Denials of motions to terminate prospective relief under the PLRA are appealable as interlocutory orders "refusing to dissolve . . . injunctions." 28 U.S.C. § 1292(a)(1). Long-settled precedent in our circuit so holds. *See Ruiz v. United States*, 243 F.3d 941, 945 (5th Cir. 2001) ("[T]his Court has jurisdiction over the appeal of both orders under 28 U.S.C. § 1292(a)(1) as refusals to dissolve an injunction.").

Congress has granted this court jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). This statute carves out an exception to the "general principle that only *final* decisions of the federal district courts would be reviewable on appeal." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981) (citing 28 U.S.C. § 1291). Unlike other interlocutory orders, orders concerning injunctions are

"immediately appealable as of right." *Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010) (quotation omitted).

It does not matter whether the word "injunction" appears on a district court's order because "the label attached to an order is not dispositive." *Abbott v. Perez*, 585 U.S. 579, 594 (2018). If "an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Ibid.* (quoting *Carson*, 450 U.S. at 83). In practice, a court "grants an injunction when an action it takes is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion." *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015) (quotation omitted).

None of this turns on an "individualized jurisdictional inquiry." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). That means "[a]ppeal rights cannot depend on the facts of a particular case." *Carroll v. United States*, 354 U.S. 394, 405 (1957). The appeals court is not supposed to scrutinize individually every order that gets appealed to it, looking for "particular injustice[s]" that might be "averted" or whether the "litigation at hand" might benefit from an appeal of that order. *Mohawk Indus.*, 558 U.S. at 605 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). Instead, the inquiry focuses on "the entire category to which a claim belongs." *Ibid.*

B

This appeal arises out of longstanding constitutional litigation about conditions at the Orleans Parish Prison relating to detainees with mental-health needs. The procedural history of this litigation is lengthy and complex, stretching back to a consent decree entered in 2013. The two panel opinions

in this case provide the factual and procedural background. *See Anderson v. City of New Orleans*, 38 F.4th 472, 472–78 (5th Cir. 2022) ("*Anderson I*"); *Anderson II*, 114 F.4th at 408–14. The instant appeal involves the district court's denial of a motion to terminate prospective relief that requires New Orleans Parish Sheriff Hutson ("the Sheriff") to construct a new prison facility. *Anderson II*, 114 F.4th at 412.

1

In 2016, the parties implemented their consent decree via an agreement that the district court entered as a stipulated order ("Stipulated Order"). *Ibid.* The Stipulated Order stated that "the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for . . . appropriate housing for prisoners with mental health issues and medical needs." *Id.* at 413. The Compliance Director's plan recommended construction of "Phase III," a new facility at the existing jail designed to house detainees with mental-health needs. *Ibid.*

In January 2019, the district court ordered the City of New Orleans (the "City") to begin the construction of the Phase III jail facility and related programming "as soon as possible." ROA.13075. Then, in March 2019, the district court ordered the City to continue renovating the existing "temporary accommodations" for the prison's detainees with mental-health conditions during the construction of the Phase III jail facility, and it ordered the City and Sheriff to continue the "programming" aspect of Phase III. ROA.13225. It also ordered the City to provide monthly progress reports concerning the construction of the Phase III jail facility. I refer to the January and March orders as the "2019 Orders."

In June 2020, the City moved under Federal Rule of Civil Procedure 60(b)(5) for relief from the 2019 Orders, arguing that "significant change[s] in the factual conditions . . . render programming, design, and construction

of the Phase III jail facility unsustainable." ROA.14102. It argued that the prison provided "medical and mental healthcare that is above the minimal constitutional standard"; the "COVID-19 pandemic w[ould] cause a significant budgetary shortfall for the City"; and "the decrease in the inmate population ma[de] the programming, design, and construction of a new Phase III jail facility unnecessary." ROA.14104. The City also argued that § 3626(a)(1)(C) of the PLRA prohibited the district court from ordering the construction of Phase III.

The district court adopted the magistrate judge's report and recommendation to deny the City's Rule 60(b)(5) motion. The district court found that the City had waived its PLRA argument and, in any event, that the court had never ordered the construction of the Phase III jail facility. Instead, the district court found that it had merely enforced the City's contractual obligation under the Stipulated Order to build the Phase III jail facility. The district court also held that the City failed to show changed factual conditions. The City appealed.

In *Anderson I*, a panel of this court affirmed. 38 F.4th at 481. That panel refused to rule on the City's PLRA argument because "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests." *Id.* at 478 (quoting *Horne v. Flores*, 557 U.S. 433, 477 (2009)). In its view, the panel "lack[ed] jurisdiction to review the substance of the January and March 2019 orders" from which the City sought relief. *Ibid.* Accordingly, the panel evaluated the City's PLRA argument only to the extent it constituted a change in factual conditions or law per Rule 60(b)(5). *Id.* at 479. Under that abuse-of-discretion review, the panel held that the City's PLRA claim failed. *Ibid.*

2

Then, in June 2023, the Sheriff moved under the PLRA, 18 U.S.C. § 3626(b), to "terminate all prospective relief regarding the construction of the Phase III jail." ROA.19054. The Sheriff argued that the district court had ordered "the parties to abide by their private agreement to build" the Phase III jail facility, ROA.19055, which is forbidden by the PLRA, *see* 18 U.S.C. § 3626(c)(2), (g)(6).

The district court adopted the magistrate judge's report and recommendation to deny the Sheriff's motion to terminate. It also entered an "Order Setting Conditions of Construction" for the Phase III jail facility, which incorporated the terms of a previous, unsigned Cooperative Endeavor Agreement ("CEA") between the City and The Sheriff. The Sheriff appealed.

C

A panel of this court dismissed the Sheriff's appeal for lack of appellate jurisdiction. *Anderson II*, 114 F.4th at 412, 418, 421. The panel's opinion is sometimes inscrutable, sometimes inconsistent, and jurisdictionally dysphoric. As Judge Smith noted in his powerful dissenting opinion: "[The majority] takes a hatchet to the [PLRA] and turns a blind eye to binding circuit precedent. The result? An opinion with reasoning that, at every turn, is fatally compromised. Some parts are totally unhinged. And the remainder is incomprehensible." *Id.* at 421 (Smith, J., dissenting).

Here, I do my best to explicate the panel's reasoning in service of criticizing it. There seem to be three holdings: (1) the panel lacked appellate jurisdiction over the denial of the motion to terminate to the extent it was really an appeal of the 2019 Orders; (2) the motion to terminate itself, to the extent it was a *bona fide* motion to terminate, was inadequately pleaded and therefore destroyed jurisdiction; and (3) even if the panel could reach the

merits, a motion to terminate was premature, somehow also destroying jurisdiction.

1

The panel first explained why it had "jurisdiction to review the denial of the . . . motion, but not the underlying . . . orders." *Id.* at 415 (majority opinion) (quoting *Anderson I*, 38 F.4th at 477–78; citing *Ruiz*, 243 F.3d at 945).

The panel's analysis proceeded as if the Sheriff had attempted to appeal the 2019 Orders directly, rather than the district court's denial of her motion to terminate prospective relief under the PLRA. Acknowledging that the Sheriff "styled her motion as one to 'terminate' rather than vacate or reverse the Phase III orders," the panel claimed that the Sheriff "[wa]s directly attacking the validity of the orders as being prohibited under the PLRA." *Id.* at 416.[3] The panel then accused the Sheriff of "attempt[ing] to circumvent procedural history and rules under the guise of a PLRA motion." *Id.* at 418 n.13. Thus, to the panel, the Sheriff's "filing is a 'motion to terminate' in name only." *Id.* at 419.[4] The panel held this destroyed § 1292(a)(1) jurisdiction for three reasons.

---

[3] The panel supports this point by analogy to *Moody National Bank v. GE Life & Annuity Assurance Co.*, 383 F.3d 249 (5th Cir. 2004). In that case, this court held that "a motion to allocate costs" that was labeled as a Rule 59(e) motion should be characterized as a Rule 54(d) motion instead. *Id.* at 251. This court reasoned that "any post-judgment motion addressing costs or attorney's fees must be considered a collateral issue even when costs or attorney's fees are included in a final judgment." *Id.* at 253. But without more, that logic does not extend to equate PLRA motions to terminate prospective relief with direct appeals of orders.

[4] Why does the panel reach this conclusion, despite *Ruiz*'s clear statement that a denial of a motion to terminate categorically is, in substance, a refusal to dissolve an injunction that grounds jurisdiction under § 1292(a)(1), which the panel cites? Because, according to the panel, in *Ruiz*, the defendants moved to terminate a consent decree; here,

*First*, the panel construed the district court's denial of the Sheriff's motion as an implementation of its prior orders. *See id.* at 416. The panel reasoned that "a court has not modified an injunction when it simply implements an injunction according to its terms or designates procedures for enforcement without changing the command of the injunction." *Id.* at 415 (quoting *In re Deepwater Horizon*, 793 F.3d at 491) (cleaned up). From that premise alone, the panel concluded that the district court's orders "simply implement the consent decree without changing the command of the injunction." *Id.* at 416 (quoting *In re Deepwater Horizon*, 793 F.3d at 491) (cleaned up).

*Second*, because § 1292(a)(1)'s exception to the final-judgment rule is "narrow," the panel reasoned, "a party challenging an interlocutory order" on appeal must also "show serious, perhaps irreparable, consequences" arising from the order. *Id.* at 415 (quoting *In re Deepwater Horizon*, 793 F.3d at 492) (cleaned up). Thus, the panel concluded, even if the district court's "observation" (observation?) "was a modification of an injunction, or refusal to dissolve an injunction," the Sheriff had not met her burden to establish "serious, perhaps irreparable, consequences." *Id.* at 416.

*Third*, the panel held that it was "bound" by *Anderson I* under the law of the case doctrine or the rule of orderliness. *See id.* at 416–17 & n.11 (citing *Anderson I*, 38 F.4th 472). (The panel was not sure which.) The panel stated that *Anderson I* and *Anderson II* both "concern the well-settled principles of

the Sheriff challenges the Stipulated Order and 2019 Orders. *See Anderson II*, 114 F.4th at 419 n.14.

How is that a distinction with a difference? Beats me. In any event, "we have not allowed district courts to 'shield [their] orders from appellate review' by avoiding the label 'injunction.' " *Abbott*, 585 U.S. at 595 (quoting *Sampson v. Murray*, 415 U.S. 61, 87 (1974)) (alteration in *Abbott*); *see also Sampson*, 415 U.S. at 87–88 (treating an order labeled as a TRO, which is not appealable under § 1292(a)(1), as a preliminary injunction, which is).

post-judgment proceedings." *Id.* at 417.[5] The logic seems to be that because the *Anderson I* panel held that the appeal of an order denying a changed-circumstances Rule 60(b)(5) motion for relief from a judgment did not give it jurisdiction to review the substance of the underlying judgment, it followed that *no* post-judgment motion could ever give a future Fifth Circuit panel jurisdiction to review the legality of the ongoing prospective relief in this case. Further, the panel concluded that *Anderson I* precluded the Sheriff's arguments that the 2019 Orders violated § 3626(a)(1)(C) because *Anderson I* had held that the PLRA worked no new change in the law, but that *Anderson I* did not preclude the Sheriff's new arguments about private settlement agreements under § 3626(c)(2). *Id.* at 418. Nevertheless, the panel declined to "reach those other" issues because it lacked jurisdiction. *Ibid.*

For these three reasons, the panel concluded that it "lack[ed] appellate jurisdiction over the substance of the 2019 Orders, and the PLRA is not a proper vehicle to challenge them." *Ibid.*

### 2

After concluding it lacked jurisdiction because the district court's injunction was not really an injunction, the panel went on to evaluate the "procedural basis for the district court's denial of the Sheriff's motion to terminate." *Ibid.* Analogizing to *Anderson I*'s Rule 60(b) holding again, the panel again disclaimed jurisdiction over the 2019 Orders (which no one

---

[5] As best I can tell, the actual *holding* of *Anderson I* that apparently controlled *Anderson II* was the workaday rule that an appeal of a post-judgment motion such as one under Rule 60(b) is "restricted to the questions properly raised by the postjudgment motion" and does "not extend to revive lost opportunities to appeal the underlying judgment." *Anderson II*, 114 F.4th at 417 (quoting 15B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3916 (2d ed. 1990); citing *Bowles v. Russell*, 551 U.S. 205, 209 (2007)).

argues are on appeal) but concluded it could review "the procedural basis for the district court's denial of the Sheriff's motion to terminate." *Ibid.*

The panel then held that the Sheriff's motion to terminate "fails procedurally" under PLRA § 3626(b) because it did not show that prospective "relief is no longer necessary to correct the existing constitutional violations." *Id.* at 420. Next, the panel mentioned that the Stipulated Order provided that "the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for . . . appropriate housing for prisoners with mental health issues and medical needs," which was apparently "a finding of compliance with the limitations set forth in § 3626(a)." *Ibid.* Plus, the district court's denial of the motion to terminate stated that "prospective relief extends no further than necessary to correct the violation of the Federal right in this case." *Ibid.* (quotation omitted). Finally, it reasoned that "nothing in Section 3626(b) supports" the argument that "Section 3626(a)(1)(C) prohibits the existence of the 2019 Orders." *Ibid.*

3

The panel concluded the apparently jurisdictional portion of its opinion by stating that "the district court has not erred in denying the motion." *Ibid.* Then the panel further asserted hypothetical jurisdiction to resolve the merits of an appeal that (it said) was beyond its jurisdiction: "Even assuming *arguendo* that we could reach the merits of the Sheriff's claim," the panel reasoned, "the lack of effort and time implementing Phase III would undermine a motion for termination," which it thought "premature." *Ibid.*

The panel was not forthcoming with an explanation for how these maneuvers comported with Article III limitations on its subject matter jurisdiction, which require the court to dismiss as soon as it realizes it lacks

jurisdiction and forbid the court from exercising hypothetical jurisdiction over the merits. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Neither of those bedrock legal principles troubled the panel, however. The panel opined on the merits, but rather than affirm the district court, it stated: "We therefore DISMISS this appeal." *Anderson II*, 114 F.4th at 421.

\*

So much for explicating the panel's opinion. In the following parts, I (II) explain why the panel undoubtedly had jurisdiction. Then I (III) show how the panel improperly analyzed the merits under the heading of jurisdiction. And I (IV) turn to the merits myself and conclude that the motion to terminate prospective relief should have been granted, as required by the PLRA.

## II

The panel piles jurisdictional misconstruction on top of misunderstanding on top of egregious legal mistake. A mistake because ample precedent establishes that this court has jurisdiction to hear the Sheriff's appeal of the denial of her motion to terminate. And egregious because this court has a "virtually unflagging obligation . . . to exercise the jurisdiction given" it. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) ("It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should.").

I (A) show why this court had jurisdiction to review the district court's denial of the Sheriff's motion to terminate prospective relief under the PLRA. Then I (B) explain why the panel's arguments to the contrary were wrong.

A

This court has § 1292(a)(1) appellate jurisdiction over the Sheriff's appeal of the district court's denial of her motion to terminate prospective relief under the PLRA because such denials are categorically appealable as interlocutory orders "refusing to dissolve . . . injunctions." 28 U.S.C. § 1292(a)(1).

Long-settled precedent in our circuit supports that conclusion. *See Ruiz*, 243 F.3d at 945 ("[T]his Court has jurisdiction over the appeal of both orders [denying motions to terminate] under 28 U.S.C. § 1292(a)(1) as refusals to dissolve an injunction."); *see also Brown*, 929 F.3d at 254 (reversing a district court's denial of a motion to terminate prospective relief under the PLRA); *Guajardo*, 363 F.3d at 398 (affirming a district court's grant of a motion to terminate prospective relief under the PLRA).

That makes sense. Denials of motions to terminate prospective relief have the "practical effect" of granting an injunction or refusing to dissolve an injunction, *Abbott*, 585 U.S. at 594 (quotation omitted), because they affirmatively authorize courts to continue issuing prospective relief—and congressionally disfavored relief at that. As Judge Smith's dissent made exceedingly clear, the "order denying the motion to terminate contains all of the requisite features of an injunction": It is an *in personam* order directed at a party, the Sheriff; it contemplates enforcement by means of contempt and sanctions; and it "refuses to dissolve any part of the consent judgment." *Anderson II*, 114 F.4th at 422 (Smith, J., dissenting); *see also In re Deepwater Horizon*, 793 F.3d at 491 ("A district court grants an injunction when an action it takes is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion." (cleaned up)).

It does not matter whether the word "injunction" appeared in the district court's denial of the motion to terminate because "the label attached to an order is not dispositive." *Abbott*, 585 U.S. at 594. Thus, these denials "should be treated as such for purposes of appellate jurisdiction," *ibid.*, and *Ruiz* was right to so hold. Indeed, that treatment should be—and has been—categorical, as the Supreme Court has instructed. *See Mohawk Indus.*, 558 U.S. at 107.

Put simply, denials of motions to terminate under the PLRA fall within "a class of orders for which appellate jurisdiction lies." *Anderson II*, 114 F.4th at 422 (Smith, J., dissenting). The denial of the Sheriff's motion is in that class, so this court has appellate jurisdiction to review it. *QED*.

B

Instead, the panel conducted the verboten "individualized jurisdictional inquiry" rather than focusing on "the entire category to which a claim belongs." *Mohawk Indus.*, 558 U.S. at 107 (quotations omitted). The panel carved out the Sheriff's "particular motion from the class of motions to which it belongs," *Anderson II*, 114 F.4th at 422 (Smith, J., dissenting), by scrutinizing the Sheriff's motion for "particular injustices" that might be "averted," *Mohawk Indus.*, 558 U.S. at 107 (cleaned up).

To accomplish this task, the panel concocted three made-to-order reasons to dismiss the Sheriff's appeal. It (1) implausibly construed the district court's denial of the motion to terminate as a mere "implementation" of the district court's previous orders. It then (2) applied the inapplicable "irreparable consequences" standard. And finally it (3) misapplied the law of the case and rule of orderliness doctrines. In doing all this, the panel ignored this court's plain holding in *Ruiz*.

1

The panel's first maneuver was to construe the district court's denial of the Sheriff's motion as an implementation of its prior orders rather than a modification. *See Anderson II*, 114 F.4th at 416. That is, the district court's orders "simply implemented the consent decree without changing the command of the injunction." *Ibid.* (quoting *In re Deepwater Horizon*, 793 F.3d at 491) (cleaned up).

It is difficult to imagine how this could be more wrong.

For one, the denial of the motion to terminate is itself a refusal to dissolve an injunction, immediately appealable under its own name under 28 U.S.C. § 1292(a)(1). *See Ruiz*, 243 F.3d at 945.

Moreover, the Cooperative Endeavor Agreement ("CEA") modified the district court's prior orders rather than merely implementing them. Recall that in denying the Sheriff's motion, the district court also entered an "Order Setting Conditions of Construction" for the Phrase III jail facility. Those conditions incorporated the terms of a previous, unsigned CEA between the City and the Sheriff. The CEA purports to bind the Sheriff and the City to new terms and obligations regarding the construction of the Phase III facility. None of the CEA's terms—which specify precisely how the City must construct Phase III—appeared in the district court's prior orders.[6]

---

[6] Not relevant to this appeal, but worth noting, is some of the CEA's highly questionable substance. The CEA requires that "[a]ny party to this contract," including "any subcontractors," "must take all necessary affirmative steps to assure that minority businesses" and "women's business enterprises . . . are used when possible." ROA.19347. "Affirmative steps must include," among others, "[a]ssuring that . . . minority businesses, and women's business enterprises are solicited whenever they are potential sources." ROA.19347–48. These provisions at a minimum offend the maxim that "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free

The CEA is not an implementation of the district court's prior orders: It is plainly a modification. Under penalty of contempt and sanction, the construction of Phase III must now—because of the court's new order—"proceed pursuant to the . . . terms of the CEA." **ROA.19519.** Those new injunctive obligations undoubtedly modifed the substantive relief sought in the complaint. *Cf., e.g.*, *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (holding that an order requiring the city to include two companies on its call list for towing impounded vehicles "provides substantive relief" and "is therefore an injunction, appealable under Section 1292(a)(1)").

Put simply, prior to the district court's order, actions taken by the Sheriff and the City that were inconsistent with the CEA were accorded no special status; after the order, those actions became punishable by contempt and sanctions. That is a modification "changing the command of the injunction," *In re Deepwater Horizon*, 793 F.3d at 491 (quotation omitted), not an implementation of it. Not that any of this matters, because even if the district court simply refused to change the injunction, that would be appealable too.

2

The panel next conjured an inexplicable hurdle for the Sheriff's motion to be appealable: "a party challenging an interlocutory order" on appeal must also "show serious, perhaps irreparable, consequences" arising from the order. *Anderson II*, 114 F.4th at 415 (quoting *In re Deepwater Horizon*, 793 F.3d at 492) (cleaned up).

---

people whose institutions are founded upon the doctrine of equality." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 208 (2023).

Again, no. The "serious, perhaps irreparable consequences" language comes from *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981). It helps an appellate court evaluate jurisdiction under § 1292(a)(1) when it is not clear whether a district court's order "was the practical equivalent of an order denying an injunction." *Abbott*, 585 U.S. at 595 (citing *Carson*, 450 U.S. at 83–84). It is not an independent bar to appealing a district court order; indeed, it appears nowhere in the text of § 1292(a).

In any event, ample judicial precedent establishes that this so-called "requirement" "does not apply to orders specifically granting or denying injunctions." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1176 (5th Cir. 1989). Such orders "are immediately appealable as of right; no additional finding of immediate, irreparable injury is required." *Quarterman*, 607 F.3d at 1048 (quoting *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992)).

As *Ruiz* establishes, a denial of a motion to terminate under § 3626(b)(2) of the PLRA is categorically a "refusal to dissolve an injunction." 243 F.3d at 945. No one could seriously contend that the district court's denial of the motion to terminate and its order enforcing the CEA did not have the "practical effect" of granting an injunction (or refusing to dissolve one). So the "serious, perhaps irreparable consequence" test does not apply to the denial of the Sheriff's motion to terminate.

But even if that test did apply, it is easy to see the serious and irreparable consequences of the district court's denial of the motion to terminate the prospective relief from the 2019 Orders.

The consequences are serious. The City and Sheriff will have to build and operate an entirely new jail facility, per the district court's minute specifications, under the threat of "contempt of court" and "severe sanctions." ROA.19520**.** The Sheriff tells us that complying with this order

creates "the need to re-appropriate" upwards of $110 million "from other municipal public works projects." Pet. for Reh'g En Banc at 8, *Anderson v. Hutson*, No. 23-30633 (5th Cir. Sept. 9, 2024). That is a "big deal." *Anderson II*, 114 F.4th at 422 n.5 (Smith, J., dissenting).

And those consequences are irreparable. What remedy could provide the defendants relief other than the dissolution of the injunction ordering them to build, maintain, and operate the Phase III facility?

These consequences are nothing like those complained of in the *Deepwater Horizon* case cited breathlessly by the panel. *See Anderson II*, 114 F.4th at 416 (citing *In re Deepwater Horizon*, 793 F.3d at 492). In that case, this court held that BP had not shown serious or irreparable consequences in its challenge to a settlement agreement where it wanted to claw back settlement funds that had been awarded to fraudulent nonprofit organizations. *See In re Deepwater Horizon*, 793 F.3d at 492. The court reasoned that these consequences were "adequately reparable through the multiple avenues BP ha[d] to pursue awards obtained fraudulently" and recover monies. *Ibid.* Indeed, the court noted, "an injury is irreparable" when it "cannot be undone through monetary remedies." *Ibid.* (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 629 (5th Cir. 1985)). That is the case here, where the injury is the ongoing prospective relief requiring political subdivisions to construct a prison facility in open defiance of the PLRA.

3

The panel's third attempt to skirt jurisdiction also fails. Implausibly, the panel held that it was bound by *Anderson I*'s jurisdictional holding under

the law of the case doctrine or the rule of orderliness. *See Anderson II*, 114 F.4th at 416–17 (citing *Anderson I*, 38 F.4th 472).[7]

Given the amount of precedent from both the Supreme Court and our court that the panel openly disregarded, in addition to the amount of statutory text from Congress that the panel openly contravened, it is difficult to take seriously the idea that the panel decision was somehow a jurisprudentially modest attempt to follow the law. And in any event, neither the law of the case doctrine nor the rule of orderliness supports, much less compels, *Anderson II*'s holding that it lacked jurisdiction.

"The law of the case doctrine generally prevents reexamination of issues of law or fact decided on appeal either by the district court on remand or by the appellate court itself on a subsequent appeal." *Id.* at 416 (quoting *Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir. 1990)) (cleaned up). And the rule of orderliness means that "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *Id.* n.11 (quoting *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)).

But *Anderson I* rendered exactly zero holdings about whether this court would have jurisdiction over future appeals based on different motions in the case or whether the prospective relief ordered by the district court violated the PLRA. *Anderson II* involved no "reexamination of issues of law"

---

[7] The panel seemed unsure about which doctrine to rely on. It appeared to ground its arguments primarily in law of the case doctrine, which the district court ruled on and the parties briefed. *See Anderson II*, 114 F.4th at 416–417. But in a footnote, the panel suggested it was also bound by the rule of orderliness. *See id.* at 416 n.11. Ultimately, this confusion does not matter, because no holding of *Anderson I* speaks to the issues underlying this appeal—so neither doctrine applies.

decided in *Anderson I* and finding jurisdiction would not have "overturn[ed] another panel's decision,"[8] especially not *Anderson I*.

The Sheriff's instant appeal for the denial of her motion to terminate raised different challenges than the City's Rule 60(b) appeal in *Anderson I*. In *Anderson I*, the City had moved in the district court under Rule 60(b)(5) for relief from the 2019 Orders on a "changed circumstances" theory. *Anderson I*, 38 F.4th at 478–79. Attached to that motion was an argument that § 3626(a)(1)(C) of the PLRA barred the district court from ordering the defendants to build the Phase III jail facility, because that provision does not authorize "the courts, in exercising their remedial powers, to order the construction of prisons." 18 U.S.C. § 3626(a)(1)(C). The *Anderson I* panel noted it lacked jurisdiction over the 2019 Orders but held that the PLRA claim failed under the Rule 60(b)(5) motion because there was no change in factual conditions or law. *Anderson I*, 38 F.4th at 479. It certainly never purported to divest future panels of the Fifth Circuit of jurisdiction over other appeals in the case.

Strange, then, to invoke the law of the case doctrine and our rule of orderliness. As the panel admits, the *Anderson I* panel "declined to rule on the merits of the City's PLRA argument." *Anderson II*, 114 F.4th at 417. Nor does "the Sheriff make[] the same argument" now that the City had made in *Anderson I*. *Anderson II*, 114 F.4th at 417. Although the district court and the United States (as intervenor-plaintiff) maintained that the law of the case doctrine precluded the Sheriff's attempt to "revive the City's already-rejected argument that the 2019 Orders violated Section 3626(a)(1)(C) [of] the PLRA," *even they* (*i.e.*, the district court and the United States) "agreed that the law of the case doctrine d[id] not bar the Sheriff's private settlement

---

[8] Adding irony to injury, *Anderson II* quietly disregarded *Ruiz*, 243 F.3d at 945.

agreement argument" under the banner of §§ 3626(c)(2) and (g)(6). *Id.* at 418.[9]

Turning baffling into bewildering, after admitting all that, the panel declined to "reach the issue of private settlement agreements" because it lacked jurisdiction over the substance of the 2019 Orders. *Ibid.* Even if one spots the panel that *Anderson I* foreclosed the Sheriff's § 3626(a)(1)(C) arguments (which it did not), it is a blatant non sequitur to conclude from that that the court lacked jurisdiction over the *non*-foreclosed § 3626(c)(2) and (g)(6) arguments.

Moreover, the Sheriff's motion to terminate, on appeal here, brought PLRA challenges under a completely different procedural heading. Due in part to the district court's conclusion that it had not ordered the defendants to build the Phase III jail facility, as prohibited by § 3626(a)(1)(C) of the PLRA, but rather ordered them to abide by their private agreement, the Sheriff brought her motion to terminate under § 3626(c)(2) and (g)(6). Those provisions, the Sheriff argued, forbid federal courts from enforcing private settlement agreements to construct a prison and limit remedies for breach to reinstatement of the case in federal court and breach-of-settlement claims in state court. The Sheriff did not bring this motion under Rule 60(b) for relief from a judgment. She brought it under § 3626(b) of the PLRA itself, which authorizes motions for termination of prospective relief. *See Anderson II*, 114 F.4th at 419.

That procedural difference matters. The panel cannot ignore that difference by calling the Sheriff's motion to terminate one "in name only," *ibid.*, and acting as if it were "attacking the validity of the [2019] orders," *id.*

---

[9] How, then, can the panel maintain that "the substance of the motions are identical"? *Anderson II*, 114 F.4th at 418. I have not a clue.

at 416. The Sheriff's PLRA motion did not attack the validity of the 2019 Orders as if it were a direct appeal. It asserted limitations on the district court's remedial authority to continue maintaining the prospective relief then in place. The Sheriff's appeal to our court is over the *denial* of that motion—itself a refusal to dissolve an injunction—not the 2019 Orders.

As Judge Smith made clear in dissent, "[a]n order issuing prospective relief can be both (1) completely valid and enforceable at the time it was ordered and (2) subsequently terminable for providing relief beyond the scope permitted by the PLRA." *Anderson II*, 114 F.4th at 423 (Smith, J., dissenting) (quotation omitted). So again, the procedural difference matters: The Sheriff's motion to terminate prospective relief under the PLRA is not a rehash of the City's Rule 60(b)(5) motion for changed circumstances (interred by *Anderson I*), and it is not an attack on the validity of the 2019 Orders when issued or the 2013 consent decree. It is a motion to terminate the relief *currently* in place.

So it is surely not the case that the Sheriff's motion to terminate is an "end run to effect an appeal outside the specified time limits." *Id.* at 417 (majority opinion) (quoting *Anderson I*, 38 F.4th at 478). If that were true, the Sheriff's motion to terminate under the PLRA would have been timely only if brought within 60 days of the district court's 2019 Orders. *See* FED. R. APP. P. 4(a)(1)(B). But the PLRA allows motions to terminate only one or two years after the district court grants or denies termination of prospective relief. *See* 18 U.S.C. § 3626(b)(1)(A)(i)–(iii). On the panel's read, then, defendants in prison litigation could *never* bring motions to terminate prospective relief, "thereby erasing PLRA motions to terminate from the U.S. Code." *Anderson II*, 114 F.4th at 424 (Smith, J., dissenting). *Anderson I* held no such thing.

## III

The panel's next set of blunders is even more confusing. After finding that it lacked jurisdiction over the appeal of the motion to terminate, the panel *twice* proceeded to the merits anyway, but then purported to dismiss for lack of jurisdiction rather than affirm the district court's denial.

First, the panel concluded that the Sheriff's motion to terminate "fails procedurally" under § 3626(b) of the PLRA because she did not argue that prospective "relief is no longer necessary to correct the existing constitutional violations." *Id.* at 420. As a result of the Sheriff's failure to meet this supposed pleading burden, the panel dismissed the Sheriff's appeal of the denial of her motion, seemingly for lack of jurisdiction (again).

Second, the panel made a failed attempt at an advisory opinion on the merits. After two purportedly jurisdictional holdings, the panel exercised hypothetical jurisdiction. "Even assuming *arguendo* that we could reach the merits of the Sheriff's claim, the lack of effort and time implementing Phase III would undermine a motion for termination." *Ibid.* Reaching the merits, the panel reasoned that the Phase III jail facility was "12.82% complete and the Sheriff and City ha[d] been slow to effectuate any stipulated remedy," so "a motion to terminate [was] at best premature." *Id.* at 420–21 (quotation omitted). But then the panel concluded it "lack[ed] jurisdiction to review" the motion's denial. *Id.* at 421.

These mystifying statements are wrong twice over: They (A) sound in merits analysis, not in jurisdiction. And (B) by proceeding to the merits after finding a lack of jurisdiction, the panel violated fundamental dictates of Article III.

## A

### 1

First, the "procedural failure." The panel opinion was confused on its face about whether this holding was jurisdictional or merits based. At the end of the section discussing how the Sheriff's motion "fails procedurally," the panel concluded that "the district court ha[d] not erred in denying the motion." *Anderson II*, 114 F.4th at 420. That sounds like affirmance on the merits to me. But the decretal line ambiguously states: "We therefore DISMISS this appeal." *Id.* at 421. And other parts of the opinion sound in jurisdictional defects as to the entire case. *See id.* 420–21 ("[T]he record shows that a motion to terminate is at best premature and we lack jurisdiction to review it."); *id.* at 420 ("Even assuming arguendo that we could reach the merits of the Sheriff's claim . . ."); *id.* at 412 ("We agree and DISMISS for lack of jurisdiction.").

Despite that language, the panel's reasoning sounds in merits. The panel identified a burden (an improper one, as I discuss below) to show "relief is no longer necessary to correct the existing constitutional violations" and held that the Sheriff failed to meet it. *Id.* at 410. When other appellate courts have agreed, as the panel did, that "the district court ha[d] not erred in denying the motion" to terminate prospective relief, they have affirmed the denial, not dismissed for lack of jurisdiction. For example, when the Supreme Court upheld a court's remedy of mandating a lower prison population in California against a challenge under § 3626 of the PLRA, it affirmed rather than dismissed for lack of jurisdiction. *See Brown v. Plata*, 563 U.S. 493, 545 (2011). But the panel provides not a single reason why the Sheriff's failure to meet a pleading burden destroyed its appellate jurisdiction over the denial of the motion.

2

Second, the supposed "prematurity" of the motion to terminate.

The panel purported to "assum[e] *arguendo*" that it could "reach the merits of the Sheriff's claim." *Anderson II*, 114 F.4th at 420. Did it? It seemed like the panel did, because it assessed the motion's so-called "maturity" under the merits heading. That would have made for an interesting advisory opinion (given the panel had already dismissed for lack of jurisdiction twice over). But finding the motion premature, the panel declined to affirm the district court's denial of the motion. Instead, it concluded (again) that it lacked jurisdiction to review it, (again) for no apparent reason and without citation to supporting legal materials. *Id. at* 420–21. That is simply incoherent.

In any event, the statute literally says the opposite of what the panel holds: "In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener . . . 2 years after the date the court granted or approved the prospective relief." 18 U.S.C. § 3626(b)(1)(A)(i). The Sheriff's 2023 motion to terminate came more than two years after the 2019 Orders. It was not "premature," and block quotes from *Brown v. Plata*, 563 U.S. 493 (2011), do not suggest otherwise. *See Anderson II*, 114 F.4th at 420.

## B

The panel's chimerical holdings—part jurisdictional, part merits— are not only malformed hybrid monsters. *See* HOMER, THE ILIAD 275 (A.T. Murray trans., 1924) ("The raging Chimaera . . . [was] not of men, in the fore part a lion, in the hinder a serpent, and in the midst a goat, breathing forth in terrible wise the might of blazing fire."). Worse still, they also violate fundamental dictates of Article III.

"Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869). So once a court decides it lacks jurisdiction over the case, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ibid.* In assuming jurisdiction and opining on the merits anyway, a court engages in the repudiated practice of "hypothetical jurisdiction," which "produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 362 (1911); *Hayburn's Case*, 2 Dall. 409 (1792)). To issue such an opinion is "to act ultra vires." *Id.* at 102. Thus, as I have clarified before, a "jurisdiction-less court cannot reach the merits." *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 449 (5th Cir. 2023).

The panel violated these bedrock principles several times over. First, the panel concluded it lacked statutory appellate jurisdiction under § 1292(a)(1) to review the denial of the motion to terminate. As I explained, that was wrong; the court definitely had appellate jurisdiction. But having decided it lacked jurisdiction, the panel should have done nothing more than announced that fact and dismissed, as *Ex parte McCardle* requires. Instead, the panel went on to consider whether the motion "fails procedurally" because the Sheriff did not meet a pleading standard, and it concluded that the "district court ha[d] not erred in denying the motion." As discussed above, that was a merits analysis, not a jurisdictional one. And as discussed below, the panel placed the burden on the wrong party anyway. So having just declared itself "jurisdiction-less," the panel should not have proceeded to the merits. *Spivey*, 79 F.4th at 449.

But even if one were to spot the panel that it lacked jurisdiction to review the denial of the Sheriff's motion for two independent reasons, its holding that the motion was premature is indefensible. It is an open and

notorious violation of the Supreme Court's teaching in *Steel Co.* The panel *admitted* that it was "assuming *arguendo*" it "could reach the merits of the Sheriff's claim" before ruling the Sheriff's motion to terminate was "premature." That is exactly the sort of "hypothetical jurisdiction" that *Steel Co.* made clear is an "ultra vires" act. 523 U.S. at 102. And it is no improvement to conclude, as if by magic, that a failure on the merits yields a lack of jurisdiction. *See Anderson II*, 114 F.4th at 420–21.

IV

Despite the panel's purported dismissal(s) for lack of jurisdiction, the panel did reach the merits of the Sheriff's motion to terminate under the heading of "procedural basis." *Anderson II*, 114 F.4th at 418. Unfortunately, that analysis was deficient top to bottom. Three of the panel's "patent error[s]" merit emphasis here. *Id.* at 424 (Smith, J., dissenting).

*First*, the panel incorrectly placed the burden on the Sheriff to argue that the prospective "relief is no longer necessary to correct the existing constitutional violations." *Id.* at 420 (majority opinion). Because "prospective relief . . . must be terminated on the motion of any party," *Collier*, 929 F.3d at 228, the Sheriff's only burden is to make her motion "2 years after the date the court granted or approved the prospective relief," 18 U.S.C. § 3626(b)(1)(A)(i). She did that. After that, the burden shifts to the parties opposing termination to provide sufficient evidence to support the findings required by the limitation clause in § 3626(b)(3). *See Collier*, 929 F.3d at 228; *see also Guajardo*, 363 F.3d at 396 (explaining that the burden of proving the requisite § 3626(b)(3) findings "is obviously on the party opposing termination").

*Second*, the district court did not make the requisite findings. "Prospective relief *must* be terminated unless 'a court makes specific written findings regarding the continuing necessity of [such] relief.'" *Anderson II*, 114

F.4th at 425 (Smith, J., dissenting) (quoting *Ruiz*, 243 F.3d at 950) (alteration in *Anderson II*). These findings must be "written" and "based on the record." 18 U.S.C. § 3626(b)(3). The court cannot "simply . . . state in conclusory fashion that the requirements of the consent decrees satisfy" the PLRA's "criteria." *Anderson II*, 114 F.4th at 425 (Smith, J., dissenting) (quoting *Castillo v. Cameron County*, 238 F.3d 339, 354 (5th Cir. 2001)).

The magistrate judge's report and recommendation failed to conduct the analysis required by § 3626(b)(3) beyond two "fleeting reference[s]" to previous findings. *Id.* at 425. Even counting those references, the district court's analysis never "identifie[d] any specific conditions in the [prison system] at the time termination was requested that constituted a current and ongoing violation of a federal right." *Id.* at 426 (quotation omitted). It never mentioned whether the Sheriff failed to comply with any of the terms of the consent decree. *Ibid.* And it never showed that any of the consent decree's terms, "or the relief previously ordered by the court," were "still needed to cure ongoing constitutional violations." *Ibid.*

*Third*, the PLRA requires termination of the prospective relief ordered by the district court in its 2019 Orders and CEA order as a matter of law. *See id.* at 427. That is true even if the district court had made the necessary findings required by § 3626(b)(3) of the PLRA. Why? Section 3626(a)(1)(C) of the PLRA provides that "[n]othing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons." So § 3626(b)(3) cannot be construed to stop the *termination* of current, ongoing prospective relief that orders the construction of prisons.

As Judge Smith put it, "the court necessarily acts *ultra vires* if it continues enforcing prospective relief relating to the construction of the Phase III facility," *Anderson II*, 114 F.4th at 427 (Smith, J., dissenting),

because that order exceeds the district court's "authority to issue and enforce prospective relief," *Miller*, 530 U.S. at 347; *see also Saahir v. Estelle*, 47 F.3d 758, 762 (5th Cir. 1995) ("Just as the scope of the consent decree does not enlarge the court's jurisdiction, the way the parties agreed to implement the remedy contained in the consent decree likewise cannot affect the jurisdictional bounds of the federal courts.").

Accordingly, the panel should have reached the merits and reversed. The district court should have granted the Sheriff's motion for termination of prospective relief, because "such relief shall be terminable upon the motion of any party" brought "2 years after the date the court granted or approved the prospective relief," 18 U.S.C. § 3626(b)(1)(i), unless the limitations of § 3626(b)(3) are met. The Sheriff's motion was procedurally valid, and the limitations were not met. The panel instead erred coming (in its erroneous finding of no jurisdiction) and going (in its erroneous merits holding).

*        *        *

The panel "majority wants to build a prison," *Anderson II*, 114 F.4th at 421 (Smith, J., dissenting), in direct contravention of the Prison Litigation Reform Act. Along the way, the panel made a mess of our great jurisdictional doctrines and flouted foundational Supreme Court precedents. Regrettably, the en banc court today grants the panel's wish. I respectfully dissent.